# Baran, Appellant, *v.* Reading Iron Company.

*Negligence—Evidence—Subsequent precautions.*

Evidence of precautions taken or repairs made after an accident is not admissible as tending in itself to prove prior negligence.

It seems that in most of the cases in which this kind of testimony was sanctioned, the testimony introduced was not of sufficient importance to require a reversal, or there was some ground for its introduction other than that it tended to show antecedent negligence.

In an action against an iron company to recover damages for death caused by the explosion of a boiler, testimony was introduced at the trial to show that the boiler which exploded was not properly supported, and that it was imprudently allowed to cool while connected with other boilers which were in full operation. Offers were then made to prove that after the accident a boiler used to replace the one that exploded was supported in a different manner, and that an employee in charge of the boilers in the mill received instructions from the defendant company thereafter to disconnect boilers from the steam main when the fires were drawn. *Held* that the offers were properly rejected

*Negligence—Evidence—Burden of proof—Explosion of boiler.*

In an action to recover damages for death caused by the explosion of a boiler where it appeared that the deceased was not connected with the defendant's works, a verdict and judgment for the defendant will be sustained, where the testimony not only failed to show negligence, but it affirmatively showed that ordinary care had been exercised, and rebutted any presumption that might be said to arise from the mere fact of the explosion.

Argued March 4, 1902. Appeal, No. 323, Jan. T., 1901, by plaintiffs, from judgment of C. P. Montour Co., Oct. T., 1897, No. 60, on verdict for defendant in case of Joseph Baran and Margareta Baran, his Wife, v. Reading Iron Company. Before McCollum, C. J., Dean, Fell, Mestrezat and Potter, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before Little, P. J.

At the trial it appeared that on October 8, 1896, plaintiff's infant daughter, aged about six months, was killed by the explosion of one of the boilers in the defendant's iron mill. One of the pieces of the boiler was carried into plaintiff's house, and killed the child when it was in bed.

When Frank Hutchinson, a witness for the plaintiff, was on the stand, he was asked the following question:

"Q. Immediately after the accident on October 8, 1896, did you have any instructions from your superior as to what to do, so far as the steam check was concerned; in case where a furnace was drawn and not working? A. Yes, sir."

Mr. Scarlet: Objected to as incompetent and irrelevant.

The Court: The question was, immediately after.

Mr. Scarlet: What is the purpose?

Mr. Hinckley: The purpose of the question is to show that after the accident the waterman was instructed that in all cases where a furnace was drawn and not working, that the steam check should be closed and the boiler disconnected from the steam system. As evidence going to the jury to prove the negligence of the company before the accident.

The Court: If it was a part of the transaction that this conversation was had, it may be given in evidence, but we think that counsel for the plaintiff should ascertain how long after the time of the accident this conversation was had before asking the question. Exception noted. Bill sealed for the plaintiff. Do you offer that as part of the transaction, the conversation occurring immediately after the accident? Fix when the time of this conversation he had with his superior occurred.

"Q. When did Mr. Bevin, your superior, give you orders as to what to do in case of a drawn furnace, as to the steam connections?"

Mr. Scarlet: How long after? We object to this question as suggesting to the witness what to say. It is a leading question.

The Court: If a declaration of this superior officer is a part of the transaction, we think it ought to be admitted, and that is the reason we suggested to you that you should inquire when this conversation occurred.

Mr. Hinckley: I will ask this question then:

"Q. Did you receive after the accident, instructions from your superior as to what you were to do, with reference to the steam check and its connections, in case of a furnace that was drawn and not working?

The Court: The declaration made by the servants of this

company, after the accident, relative to the alleged defects of these boilers, are not admissible. Those declarations are not part of the res gestæ. But if the declarations that you propose to prove are part of the res gestæ, then we think that they are evidence, and you can inquire from the witness how long after this accident occurred those statements were made by his superior. We have indicated what we believe to be the rule, and have suggested to you that you should inquire as to the time when this conversation was had between the superior officer and himself.

Mr. Hinckley: Your honor will see that I will have to ask whether the conversation did occur.

Mr. Scarlet: Do you pretend to say that you don't know this?

Mr. Hinckley: I can't tell you the precise moment.

The Court: We think, judge, you should ascertain the time from the witness privately.

Mr. Hinckley: Counsel for plaintiff having shown by the witness upon the stand that at the time of the accident he had no instructions from his superior officer, as to what to do with the steam connections of the boiler with the steam main in case of a furnace that was drawn and not working; propose to show by the witness upon the stand that after the accident it was necessary to shut down the mill and clean the débris and replace the destroyed furnace, and that in consequence the mill was closed down some two or three weeks, and that upon resuming work, the first work that was done after the accident, instruction was given by his superior officer, the master mechanic, that hereafter in all cases where a furnace was drawn that the steam connections should be closed and the boiler disconnected from the steam main. This all for the purpose of showing the negligence in the company in not having given such orders prior; one of the allegations of the plaintiff being that this accident occurred from want of such orders and from want of the disconnection of the boiler from the steam main.

Mr. Scarlet: Defendant's objection is that, if, as counsel stated, this offer is part of the res gestæ, we object to it as incompetent and irrelevant. And secondly, that it is not shown nor pretended to be shown that the witness upon the stand was not a competent and careful water tender and knew what was

to be done in cases of that kind, without any instructions whatever from any other person, prior to the accident.

The Court: The declarations made by the superior officer of the witness upon the stand when he resumed work three or four weeks after the accident occurred, we do not admit as part of the res gestæ. The objection is sustained. The offer overruled. Exception noted and bill sealed for the plaintiff. [4]

Frank Hutchinson recalled for plaintiff.

Examined by Mr. Hinckley.

Mr. Hinckley: I wish to renew an offer that was made yesterday. I will give the form to the stenographer.

It having been shown by plaintiffs' proof, that the ordinarily safe and prudent thing to have done in case a furnace was shut down, was to cut off the steam connection, and the witness having shown that the waterman in charge of the boiler in question (together with other boilers) had received no orders from his superior as to what to do in such case, and that he had not cut off the steam connection at the time of the explosion ; it is proposed now to show by the witness that after the explosion there were required a week or two to clean up the débris and repair the machinery, and that as soon as the mill was again started, after the accident, defendant company issued orders to the waterman that in all cases where a furnace was shut down for repairs the steam connection should be cut off, as plaintiffs' proof shows should have been done at the time of the accident. This for the purpose of showing a recognition by defendant company of negligence in not having done so before.

Mr. Scarlet: It is objected by the defendant that it is not shown, that the witness, proposed to be asked the question, upon the stand, was incompetent in any way to know what to do under circumstances of that kind, and that, therefore, without proof of negligence on the part of the company in hiring an incompetent person to take charge of the water of the mill, this testimony would be irrelevant and incompetent, and would not go to prove the specific act of negligence of the defendant for which this action is brought, and which it is incumbent upon the plaintiff to prove as being the cause of the accident; and it further being shown by the plaintiff in the cause that it was

not the cause of the accident, but that an entirely different theory of negligence is asserted, to wit: that the accident occurred by reason of the fact that the boiler broke, with which the action of the waterman or of the fireman or of any one else had no connection whatever; and being an entirely different and distinct cause of the explosion, it is therefore incompetent and not in support of the plaintiff's theory.

The Court: We believe that the proposed offer, if admitted, would tend to show declarations made a couple of weeks after the accident or explosion, by a servant of the company, and for the purpose stated in the offer we do not believe it is admissible in evidence, it being no part of the res gestæ. The objection is sustained and the offer overruled. Exception noted for the plaintiff. Bill sealed. [5]

George Sandal sworn for plaintiff.

Examined by Mr. Hinckley.

" Q. Where do you live, Mr. Sandal? A. Mahoning township. Q. What is your occupation? A. Millwright. Q. Did you work at any time at the Reading Iron Company, and if so, when? A. I did. I worked there in 1896. Q. As millwright? A. Yes, sir. Q. What time in 1896? A. The whole year of 1896. Q. Did you do any work in replacing the boiler at the furnace where this No. 5 was blown out? A. I did. Q. When? A. After the explosion. I can't just remember the exact time. It was several weeks afterward, when they got the boiler ready to put in. Q. Will you tell us how you hung or supported that boiler? "

Mr. Scarlet: Objected to as incompetent and irrelevant.

Mr. Hinckley: We make this offer: Plaintiffs' proof showing that it was an imperfect support of boiler No. 5 to rest one end upon a nine-inch wall, and suspend the other end by a hanger and bolt, but that a proper support would have been to suspend the boiler from the center; in addition, it is proposed to show by the witness who was the millwright in the employ of the defendant company and who replaced the boiler at the furnace where the exploded boiler had blown out, that after the accident, when boiler No. 5 was replaced by another boiler, that the defendant company did support it by an additional support from the center. This for the purpose of showing a recogni-

tion by the defendant company of its negligence in not supporting the former boiler from the center.

Mr. Scarlet : That is objected to as being incompetent, because it would not be a recognition of any negligence upon the part of the defendant company.  The point to which the evidence would go under the plaintiff's proof so far would be that the defect in the boiler was a latent defect, only discoverable by the tests to which they subjected it, and not such tests as under the law the defendant company was bound to make ; that the defendant company having had this boiler in use for a number of years and operating it up until that time without any damage whatever, was not bound to know even upon the theory of the plaintiff expressed by a so-called expert, was not bound to know that that was negligence in any way at all ; and the different hanging of the boiler subsequent to the accident would be no recognition upon the part of the defendant company that it knew or ought to have known the specific negligence which it is incumbent upon them to prove and of the company to have notice of ; and it is irrelevant and incompetent.

The Court : We feel obliged to sustain the objection and overrule the offer.  Exception noted for the plaintiff.  Bill sealed. [6]

The court charged in part as follows :

[Negligence in this defendant company is not to be presumed ; but the burden of proof is upon the plaintiffs to satisfy the jury by a preponderance of evidence, that the defendants are chargeable with negligence.

The mere fact of the explosion of this particular boiler on the evening of October 8, 1896, standing by itself, and independent of other facts, is no evidence of the company's negligence or want of proper care in the use of the boiler.  It will be presumed, until the contrary appears, that this company had a care and due regard for the preservation of their own property, the safety of their own employees and others, as well as of themselves.

They were at the time of the explosion and before in the exercise of a lawful right, in using and operating steam boilers on their own premises, in the management of this industry.  Other facts establishing the fault or negligence of the owners, the de-

fendants, beside the mere fact of the explosion itself, are necessary to be proved, in order to fix a liability for damages.] [7]

[Now, if under all the evidence submitted in the cause, you shall come to the conclusion that the plaintiffs have not succeeded in establishing the fact of negligence upon this defendant company by satisfactory evidence and fairly preponderating, bearing in mind that the mere fact of the explosion of this boiler is not in itself evidence of negligence ; then the defendant company is entitled to your verdict.] [8]

[While the testimony as to the tests made of the pieces cut from this boiler in the stretching machine, and by the cold bending test, was admitted in evidence, the jury should be cautioned that any effect, not contemplated nor warranted by law, should be given to this testimony in that particular.

This defendant company, nor no one else using steam boilers, owe a duty, either to their own employees or to third persons, to tear their machinery and boilers to pieces and send them abroad to be stretched and tested, before operating.   Such a rule would be unreasonable.   We have previously announced the rule as to measure of the duty owners and users of machinery and boilers are required to observe.] [9]

Defendant presented these points :   ·

2. Negligence is never to be presumed, and the fact that an accident occurred on October 8, 1896, would not justify the jury in inferring from the fact that an explosion took place, that it was caused by the negligence of the defendant, for the reason that it might have occurred without any fault of the defendant whatever.   Answer :  Affirmed.  [10]

3. It is incumbent upon the plaintiffs to prove negligence upon the part of the defendant which resulted in the accident, by a fair preponderance of evidence.   Answer :  Affirmed.  [11]

4. The mere fact that an explosion occurred, which caused the death of the infant in this case, is not enough to establish negligence of the defendant company.   There must be additional and affirmative proof of the particular negligence which caused the explosion in this case.   Answer :  Affirmed.  [12]

5. In this case, as in all other actions for negligence, it was the duty of the plaintiffs to inform the jury explicitly what the negligence consisted in which caused the accident, and the un-

1902.]     Points—Arguments.

bending test of negligence in methods, machinery and appliances is the ordinary usage of the business. *Answer :* Affirmed. [13]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (4–6) rulings on evidence, quoting the bill of exceptions ; (7–13) above instructions, quoting them.

*H. M. Hinckley*, with him *C. A. Sidler*, for appellants.—The acts of the defendant company, done after the explosion, were some evidence of recognition upon their part, that these acts should have been done before the accident, and that the neglect to do them before, caused the accident: Specht v. Penna. R. R. Co., 7 Pa. C. C. Rep. 55 ; Penna. R. R. Co. v. Henderson, 51 Pa. 320 ; West Chester, etc., R. R. Co. v. McElwee, 67 Pa. 314 ; McKee v. Bidwell, 74 Pa. 218 ; Card v. Columbia Twp., 191 Pa. 254 ; Lederman v. Penna. R. R. Co., 165 Pa. 125.

There are cases where the circumstances amount to evidence, from which negligence may be inferred: Shafer v. Lacock, 168 Pa. 497 ; Rose v. Stephens & Condit Transportation Co., 20 Blatchf. 411 ; Mulcairns v. Janesville, 67 Wis. 24 ; White v. Boston, etc., R. R. Co., 144 Mass. 404 ; 11 N. E. Rep. 552 ; Piggot v. Eastern Counties Ry. Co., 3 C. B. 229 ; Spees v. Boggs, 198 Pa. 116 ; Stearns v. Ontario Spinning Co., 184 Pa. 523 ; Devlin v. Beacon Light Co., 198 Pa. 585.

The court in saying to the jury that negligence was never to be presumed, was stating the law that obtains in cases of master and servant, employer and employee ; and not in cases similar to the one at bar.

It was not necessary in this case that plaintiff's evidence showing negligence should preponderate.

It was not necessary in this case that plaintiffs give affirmative proof of the particular negligence which caused the explosion: Mixter v. Imperial Coal Co., 152 Pa. 395.

*James Scarlett*, with him *Charles Chalfant, Jefferson Snyder* and *S. P. Wolverton*, for appellee.—The burden was on the plaintiff to prove negligence by a fair preponderance of evidence,—the negligence which was the cause of the accident: Brunner v. Blaisdell Bros., 170 Pa. 25 ; Ford v. Anderson, 139 Pa. 261 ; Davidson v. Humes, 188 Pa. 336.

The mere fact of an explosion occurring which caused the death of the infant in this case was not enough to establish the negligence of the defendant company. There must be additional and affirmative proof of the particular negligence which caused the explosion : Mixter v. Imperial Coal Co., 152 Pa. 395 ; Reese v. Hershey, 163 Pa. 253 ; Reese v. Clark, 146 Pa. 465 ; Titus v. Bradford, etc., Railroad Co., 136 Pa. 618 ; Kehler v. Schwenk, 144 Pa. 348 ; P. & R. R. R. Co. v. Hummell, 44 Pa. 375 ; Cunningham v. Fort Pitt Bridge Works, 197 Pa. 630.

It is not an unbending rule of evidence that precautions taken subsequent to the fact are always to be taken to show an antecedent want of care. The cases cited by the appellant do not support such a contention. In every case cited, cause and effect are plainly discernible. The conduct which was held to be in the nature of the admission could not be misconstrued in the ordinary light of common experience : Reese v. Hershey, 163 Pa. 253 ; Morse v. Minneapolis, etc., Ry. Co., 30 Minn. 465 ; 16 N. W. Repr. 358 ; Nalley v. Hartford Carpet Co., 51 Conn. 524 ; Spade v. Lynn & Boston R. R. Co., 168 Mass. 285 ; 47 N. E. Repr. 88.

OPINION BY MR. JUSTICE FELL, April 21, 1902:

In support of the averments of negligence testimony was introduced at the trial to show that the boiler which exploded was not properly supported, and that it was imprudently allowed to cool while connected with other boilers which were in full operation. Offers were then made to prove that after the accident a boiler used to replace the one that exploded was supported in a different manner, and that an employee in charge of the boilers in the mill received instructions from the defendant company thereafter to disconnect boilers from the steam main when the fires were drawn. The distinct purpose of these offers was to show a recognition by the defendant of its negligence in not having properly supported and managed the boiler, and the overruling of them raises the question whether evidence of precautions taken after the alleged negligent act is admissible for the purpose of showing antecedent negligence.

The reception of this kind of testimony is undoubtedly sanctioned by some of our cases, but in most of these cases the tes-

timony introduced was not of sufficient importance to require a reversal, or there was some ground for its introduction other than that it tended to show antecedent negligence. In none of the cases has the subject been discussed, and it can scarcely be said that this court has ever been deliberately committed to the proposition that evidence of precautions taken or repairs made after an accident is admissible as tending in itself to prove prior negligence. The first case that appears to sustain this proposition is Penna. Railroad Co. v. Henderson, 51 Pa. 315, decided in 1866. A drover in charge of live stock which was being carried by the railroad company on a branch road reached a junction where he was to take the cars on the main line. He was directed to go to a platform between the tracks and wait for his train, which was slowing up. While waiting by the side of the train until it should stop, he was struck by an express train, which passed on the other track. The platform was six feet wide, and the cars overlapped it so as to leave only two feet and a half of clear space in which to stand. It was said in the opinion, in disposing of one of the specifications of error, that it was clearly proper for the plaintiff to show that immediately after the accident the agent of the railroad telegraphed the general superintendent stating the situation of the platform and that he thought it ought to be removed, and that it was removed the next day. The main question considered in the opinion was whether the company could by contract with a passenger relieve itself from liability for its negligence, and this question was discussed at length. In view of the manifest and gross negligence of the company in so locating a platform that it would be a death trap, the court may have been of opinion that the admission of this testimony did not call for a reversal or that the testimony was competent as showing the declarations and acts of the officers of the company immediately connected with the accident. It was treated both in the argument of the case and in the opinion as a matter of minor importance and merely incidental to the main question involved in the case. The statement however in the opinion that the testimony was " clearly proper," gave rise to what has been considered a rule on the subject in this state. A like statement was made in the opinion in West Chester Railroad Co. v. McElwee, 67 Pa. 311, another case in which the negligence of the defendant was so

manifest that proof of subsequent alterations could not make it more apparent. In McKee v. Bidwell, 74 Pa. 218, attention was called to the cases of Railroad Co. v. Henderson and Railroad v. McElwee, but the reversal was on the ground that the question of the plaintiff's negligence should have been submitted to the jury. Penna. Telegraph Co. v. Varnau, 15 Atl. Repr. (Pa.) 624, may be classed with these cases, and Pittsburg Southern Railway Co. v. Taylor, 104 Pa. 306, Sweeny v. Barrett, 151 Pa. 600, Derk v. Northern Central Railway Co., 164 Pa. 243, and Card v. Columbia Township, 191 Pa. 254, merely recognize the existence of the rule, but predicate nothing of it. In Lederman v. Penna. Railroad Co., 165 Pa. 118, there was a special reason for the admission of the testimony to show that safety gates had been erected after the accident. The jury had been on the ground and had seen them, and it was proper in rebuttal to show that they were not there when the accident happened. In Gavigan v. Atlantic Refining Co., 186 Pa. 604, care was taken not to sanction the rule, and in Hager v. Wharton Township, 200 Pa. 281, doubt as to its correctness was expressed.

No judgment appears to have been affirmed where the admission of such testimony was of vital importance at the trial, and in the later cases the rule has been recognized with reluctance and doubt suggested as to its validity. The time has come when we should distinctly say that we do not approve the rule, and that the cases which may be considered as announcing and sustaining it are to that extent overruled. The admission of such testimony cannot be defended on principle. It is not more likely to show that there was negligence before the accident than that the occurrence of the accident first suggested the use of methods or appliances not before thought of; it applies to conduct before an accident a standard of duty determined by after-acquired knowledge; it punishes a prudent and well-meaning defendant who guards against the recurrence of an accident he had no reason to anticipate, or who out of a considerate regard for the safety of others exercises a higher degree of care than the law requires.

While the authorities on this question in other jurisdictions are not harmonious, the trend of decision is most decidedly against the admission of such testimony, and in some jurisdictions, notably Minnesota, where the testimony was formerly ad-

mitted, the rule has been changed. In Hart v. Lancashire and Yorkshire Railway Co., 21 L. T. (N. S.) 261, it was said by BRAMWELL, B.: " There are matters of considerable importance involved in this particular case. One of them is that people do not furnish evidence against themselves simply by adopting a new plan in order to prevent the recurrence of an accident. I think that a proposition to the contrary would be barbarous. It would be as I have often had occasion to tell juries to hold that because the world gets wiser as it gets older, therefore it was foolish before." The rule of exclusion was affirmed by the Supreme Court of the United States in the case of Columbia and Puget Sound Railroad Company v. Hawthorne, 144 U. S. 202; 12 Sup. Ct. Repr. 591; and Mr. Justice GRAY said in delivering the opinion of the court: " Upon this question there has been some difference of opinion in the courts of the several states. But it is now settled upon much consideration, by the decisions of the highest courts in most of the states in which the question has arisen that the evidence is incompetent, because the taking of such precautions against the future is not to be considered as an admission of responsibility for the past. It has no legitimate tendency to prove that the defendant had been negligent before the accident happened, and it is calculated to distract the minds of the jury from the real issue and to create a prejudice against the defendant." A leading case on the subject is Morse v. Minneapolis & St. Louis Ry. Co., 30 Minn. 465; 16 N. W. Repr. 358, which overrules a number of previous decisions of that court. In the opinion by MITCHELL, J., it is said: " But on mature reflection we have concluded that evidence of this kind ought not to be admitted under any circumstances, and that the rule heretofore adopted by this court is in principle wrong, not for the reason given in some courts that the acts of the employees in making such repairs are not admissible against their principals, but upon the broader ground that such acts offer no legitimate basis for construing an act as an admission of previous neglect of duty." To the same effect are the decisions in nearly every state in which the subject has been considered. Among the multitude of cases some of the more recent are: Clapper v. Waterford, 131 N. Y. 382; Whelton v. West End St. Railway Co., 172 Mass. 555; Hodges v. Percival, 132 Ill.

53; Howe v. Medaris, 183 Ill. 288; Terre Haute, etc., R. R. Co. v. Clem, 123 Ind. 15; Sievers v. Peters Box & Lumber Co., 151 Ind. 642; Town of Waterbury v. Waterbury Traction Co., 50 Atl. Repr. (Conn.) 3; Green v. Ashland Water Co., 101 Wis. 258; Beard v. Guild, 107 Iowa, 476; Aldrich v. Concord, etc., R. R. Co., 67 N. H. 250; Alcorn v. Chicago, etc., Railroad Co., 108 Mo. 81; Louisville, etc., R. R. Co. v. Malone, 109 Ala. 509; Anson v. Evans, 19 Colo. 274; Gulf, etc., Ry. Co. v. Compton, 75 Tex. 667; Sappenfield v. Main Street, etc., Railroad Co., 91 Cal. 48; Giffin v. City of Lewiston, 55 Pac. Repr. (Idaho) 545; Illinois Central Railroad Co. v. Wyatt, 104 Tenn. 432; Standard Oil Co. v. Tierney, 17 S. W. Repr. (Ky.) 1025; Louisville, etc., Railroad Co. v. Bowen, 39 S. W. Repr. (Ky.) 31; Noble v. St. Joseph, etc., St. Ry. Co., 98 Mich. 249. With these decisions we are in entire accord. The cases are however to be distinguished from a class with which they are sometimes confounded, in which evidence of acts of repair or construction is received to prove dominion or control.

The only remaining question raised by the specifications that need be considered is whether there was error in the instruction that the plaintiffs could not recover without affirmative proof of negligence that caused the explosion. If we assume that proof of the fact of the explosion of the boiler, resulting in injury to a person not connected with the defendant's works, made out a prima facie case which called for explanation by the defendant, and in the absence of it would sustain a verdict on the ground of negligence, the only burden cast on the defendant was to show that due care had been exercised. In the exceptional cases in which the maxim, res ipsa loquatur, applies, the burden on the defendant is not that of satisfactorily accounting for the accident, but of showing freedom from fault: Stearns v. Ontario Spinning Co., 184 Pa. 519; East End Oil Co. v. Penna. Torpedo Co., 190 Pa. 350. The plaintiffs did not rest on proof of the explosion and leave the duty of explanation with the defendant. In order to establish a basis for a theory advanced by experts they proved the circumstances under which the explosion took place, and all the facts connected with the operation and management of the boiler, and on these proofs the case was submitted to the jury. This testimony not

only failed to show negligence, but it affirmatively showed that ordinary care had been exercised, and rebutted any presumption that might be said to arise from the mere fact of the explosion.

The judgment is affirmed.