THE GREAT ATLANTIC AND PACIFIC TEA COMPANY

*vs.*

KENNEBEC WATER DISTRICT

Kennebec.    Opinion, December 3, 1943.

*Locke, Campbell & Reid,* for the plaintiff.

*Harvey D. Eaton,* for the defendant.

SITTING: STURGIS, C.J., THAXTER, HUDSON, MANSER, MURCHIE, CHAPMAN, JJ.

THAXTER, J. This action on the case to recover damages caused by the alleged negligence of the defendant was heard by the presiding justice with the right of exceptions reserved. He ordered the entry of judgment for the plaintiff in the sum of $1,828.15 and the case is before us on the defendant's exceptions. The claim is that there is not sufficient evidence to support the finding.

The plaintiff operated a grocery store in the City of Waterville. The defendant supplied water service to the plaintiff. To measure the water used, the defendant on November 22, 1938, approximately two years and a half prior to the accident here in question, installed a meter on the defendant's premises. The meter was made by the Hersey Manufacturing Company, a concern of the highest standing, and had been rebuilt by the manufacturer just prior to the installation. It was supposed to pass the same tests as to pressure as a new meter. It had what is known as a frost proof bottom which was designed to let go when the pressure within reached a certain point. The purpose was to prevent damage to the working parts of the mechanism, if the pressure within became too great because of freezing. It is conceded that the normal water pressure maintained by the defendant throughout the area where the plaintiff's store was located was slightly in excess of one hundred pounds to the square inch, and the evidence establishes that the meter in question was designed to withstand a pressure of at least six hundred pounds before the bottom would let go. About midnight on Saturday, May 17, 1941, the plaintiff's store manager inspected the cellar of the store and read the meter which was located there. Everything seemed to be in a satisfactory condition. The next afternoon, Sunday, between two and four o'clock he entered the store and found a large amount of water in the cellar, which had done extensive damage to the stock of merchandise. Investigation showed that the bottom of the meter had come off. Certainly no frost caused the break; and

we are left with but two explanations for what happened,— either there was an excess pressure or else the meter was defective. There is, however, in the evidence nothing to show anything but the normal pressure in the defendant's system, and if there was in the store any excess pressure built up by what is known as hammer, it was due to the sudden closing of automatic shut-offs which were installed by the plaintiff. We are as a matter of fact faced with an accident for which there is no adequate explanation.

There is a suggestion by the plaintiff that the defendant should have known that shut-offs of this nature were commonly in use and should not have installed a meter which would. let go on building up such a pressure. But there is nothing whatever in the evidence to show any negligence on the part of the defendant in failing to anticipate such an eventuality; and in any event it is only conjecture that it was excess pressure due to hammer which caused the accident. The plaintiff, therefore, really rests its claimed right of recovery on the doctrine of *res ipsa loquiter*. The plaintiff argues that the following statement of the doctrine from *Chicago Union Traction Co.* v. *Giese*, 229 Ill., 260, 82 N. E., 232, cited with approval in the recent case of *Nichols* v. *Kobritz*, 139 Me., 258, 29 A. (2d), 161, warrants a recovery in this case:

> "When a thing which has caused an injury is shown to be under the management of the party charged with negligence, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, the accident itself affords reasonable evidence, in the absence of an explanation by the party charged, that it arose from the want of proper care."

The rule has been applied in this jurisdiction to cases where automobiles suddenly and without explanation have left the highway. *Chaisson* v. *Williams*, 130 Me., 341, 156 A., 154;

*Shea* v. *Hern,* 132 Me., 361, 171 A., 248; *Sylvia* v. *Etscovitz,* 135 Me., 80, 189 A., 419. The gist of the doctrine is that the unexplained accident under the particular circumstances warrants an inference of negligence. But this inference may be rebutted. The defendant by showing how the accident happened may establish that it was not due to his fault. Shearman and Redfield on Negligence, Rev. Ed., pages 154-155. It is not necessary, however, for the defendant to go that far. He need not show how the accident happened, if without doing so he can establish that he did his full duty under the circumstances to guard against it. *Klein* v. *Fraser,* 155 N. Y. Supp. 848, 169 App. Div., 812; *Baran* v. *Reading Iron Co.,* 202 Pa., 274, 51 A., 979; Shearman and Redfield on Negligence, *supra.* It has accordingly been held that the rule does not apply if the accident was caused by a defect in an instrumentality not discoverable on reasonable inspection and for which fault the defendant was not responsible, even though such instrumentality may have been in use by a defendant and under its control. *Cederberg* v. *Minneapolis, St. Paul & S. Ste. M. R'y Co.,* 101 Minn., 100, 111 N. W., 953, (fracture in cross head and piston rod of a locomotive); *Memphis Street R'y Co.* v. *Stockton,* 143 Tenn., 201, 226 S. W., 187, 22 A. L. A., 1467, (defect in an air brake); *Fitzmaurice* v. *Boston, Revere Beach & Lynn R'd Co.,* 256 Mass., 217, 152 N. E., 239, (break in axle of a railway car).

In the instant case the meter was of an approved design and bought from a reputable manufacturer. No amount of inspection by the defendant would have shown any defect, for it was impossible to find any flaw even after the appliance had been dismantled. Any inference of negligence of the defendant which may have arisen because of the mere happening of the accident has been effectively rebutted. To hold otherwise would be to make the defendant an insurer regardless of negligence. The case is quite different from *Leighton* v. *Dean,* 117 Me., 40, 102 A., 565, L. R. A., 1918 B, 922. In that case to use the language of the court page 44: "The very circumstances of this

accident seem to establish the plaintiff's case that the awning was insecure and that the defendant failed to use proper care to make it reasonably safe." Although the issue of liability must be governed by the facts of each particular case, there is an analogy between this case and *Edwards* v. *Cumberland County Power & Light Co.*, 128 Me., 207, 146 A., 700, which involved the escape of electricity due as was claimed to a defective appliance. The court there said, page 217: "The inference of negligence that makes out a *prima facie* case is of no avail to a plaintiff and will not maintain a verdict in his behalf, when defendant has shown that its appliances were of standard pattern and approved design for construction of its type."

There being no evidence to warrant the inference of negligence, the ruling below was legal error.

*Exceptions sustained.*