J-A01035-21 & J-A01036-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOANN RODRIGUEZ, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KEYSTONE QUALITY TRANSPORT CO., | : | |
| | : | |
| Appellant | : | No. 2287 EDA 2019 |

Appeal from the Order Entered June 13, 2019
in the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  December Term 2017 No. 00517

| | | |
|---|---|---|
| JOANN RODRIGUEZ, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KEYSTONE QUALITY TRANSPORT CO., | : | |
| | : | |
| Appellant | : | No. 157 EDA 2020 |

Appeal from the Order Entered November 12, 2019
in the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  No. 171200517

BEFORE:   BENDER, P.J.E., OLSON, J. AND STRASSBURGER, J.*

MEMORANDUM BY OLSON, J.:                          **FILED JULY 23, 2021**

*Retired Senior Judge assigned to the Superior Court.

In 2287 EDA 2019, Keystone Quality Transport Co. (Keystone) appeals from a judgment entered in favor of Joann Rodriguez.[1]  We vacate the judgment at 2287 EDA 2019 and remand for further proceedings.  In 157 EDA 2020, Keystone appeals from a November 12, 2019 order requiring Keystone to post an appellate bond pursuant to Pennsylvania Rule of Appellate Procedure 1731 in connection with its appeal at 2287 EDA 2019.[2]  We dismiss the appeal at 157 EDA 2020 as moot.

The underlying case stems from a motor vehicle accident that occurred on September 1, 2006.  The trial court provided the following summary of the facts.

> At the time of the incident, Ms. Rodriguez, a nurse's assistant, was a front seat passenger in an ambulance owned by defendant, Keystone, and operated by its employee, [Daniel McCanns],[2] which rear-ended a car stopped at a red light at the intersection of Girard Avenue and 38th Street in Philadelphia.  At the time, the ambulance was transporting [to court] a patient of the hospital where Ms. Rodriguez worked.  Per her job duties, Ms. Rodriguez was required to escort patients to and from the

---

[1] Keystone purports to appeal from the June 13, 2019 order denying its motion for post-trial relief; however, an appeal properly lies from the entry of judgment following the trial court's disposition of post-trial motions.  **See Fanning v. Davne**, 795 A.2d 388 (Pa. Super. 2002).  Although Keystone's notice of appeal was filed prematurely in the instant matter, final judgment was entered on July 16, 2019; hence, the notice of appeal relates forward to that same date.  **See** Pa.R.A.P. 905(a)(5).  **See also Drum v. Shaul Equipment and Supply Co.**, 787 A.2d 1050, 1052 n.1 (Pa. Super. 2001) (noting that entry of final judgment during the pendency of an appeal is sufficient to perfect appellate jurisdiction).

[2] This Court ordered the appeals to appear consecutively before the same panel.  We dispose of both appeals herein.

- 2 -

hospital after a visit to court for a hearing. She was not an employee or borrowed servant of Keystone, therefore worker compensation implications were not an issue.

[Ms. Rodriguez sued Keystone for damages to compensate for lost wages and injuries, contending that Keystone's employee operated the ambulance negligently]. A jury trial commenced on January 29, 2019[,] and concluded with a verdict in her favor and against Keystone totaling $610,000.00.[3] At trial, [Ms.] Rodriguez testified that on the day of the accident it had been raining and the streets were wet. She testified that the ambulance driver was driving too fast and recklessly throughout the trip. Just prior to the accident, she estimated the speed of the ambulance as between 50 and 60 miles per hour. She made this observation just prior to observing the traffic stopped ahead at a red light. Keystone contested the speed of the vehicle and its employee[, Cory Lundberg, who was riding in the back of the ambulance,] testified [the ambulance] was traveling in the 35 [mile-per-hour] range.

The ambulance driver then attempted to make a sudden stop, but the ambulance skidded and slid on the trolley tracks, slamming into the rear of a car stopped at a red traffic light. Ms. Rodriguez testified that she had immediate pain in her left leg and went to her employer[-]referred medical office immediately after returning to the hospital.

_____

[2] Mr. McCan[n]s did not attend the trial.

[3] The jury awarded $10,000.00 for lost wages and $600,000.00 for pain and suffering.

_____

An MRI of her lumbar spine revealed a large herniated and protruding disc at L5-S1 impinging on the S1 nerve. She followed the doctors' advice and underwent physical therapy for approximately six months. She was out of work for five months and then placed on limited duty for three and [one-half] months. The jury [heard] evidence of … her lost wages to be $20,0000.00. Her workers compensation doctor, Mark Allen, M.D., testified that the injuries she suffered were permanent, severe[,] and a "ticking time bomb" with a potential for serious future complications and possibly even surgery. After hearing all

> of the evidence presented by both parties, the jury deliberated and returned the aforesaid verdict.

Trial Court Opinion, 5/18/2020, at 7-8 (party designations and unnecessary capitalization altered).

Keystone timely filed a post-trial motion, which the trial court denied on June 13, 2019. Judgment was entered in Rodriguez's favor on July 16, 2019. Keystone filed a notice of appeal, which was docketed at 2287 EDA 2019. The trial court ordered Keystone to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b) and Keystone complied.

While the appeal was pending, Rodriguez filed a motion to compel Keystone to respond to discovery requests she previously served upon the company in aid of execution of judgment. Initially, the trial court dismissed Rodriguez's motion without prejudice. When Rodriguez moved for reconsideration, the trial court realized the motion had been assigned to the wrong judge. It vacated the order dismissing the motion and reassigned it to the trial judge who oversaw the trial. While the motion was pending, Rodriguez filed a motion for a supersedeas appeal bond on November 18, 2019. Keystone opposed both the motion to compel and the motion for supersedeas appeal bond. After a hearing on both motions, the trial court entered an order on December 12, 2019. The order denied Rodriguez's motion to compel discovery without prejudice for the pendency of the appeal and granted Rodriguez's motion for the placement of an appellate bond.

- 4 -

Specifically, the trial court ordered Keystone to post a bond conforming to the requirements of Pa.R.A.P. 1734 in an amount equal to 120% of the judgment and provide notice to the prothonotary and trial court that it had done so within 14 days. The trial court ordered all proceedings stayed during the pendency of the appeal. The trial court entered its stay order as an ancillary order pursuant to Pa.R.A.P. 1701(b).

Keystone filed a separate notice of appeal from the December 12, 2019 order, which was docketed in this Court as 157 EDA 2020. The trial court ordered Keystone to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b) and Keystone complied. On May 18, 2020, the trial court submitted a single Rule 1925(a) opinion addressing both appeals.

Keystone raises three issues on appeal at 2287 EDA 2019.

1.Whether the trial court erred in denying Keystone's motion for a new trial based upon the improper admission of subsequent remedial measure evidence?

2.Whether the trial court erred by denying Keystone's request for a remittitur and/or new trial where the evidence presented did not support the award for non-economic damages in the amount of $600,000.00?

3. Whether the trial court erred by denying Keystone's request for remittitur and/or new trial based on an inconsistent jury verdict?

Keystone's Brief (2287 EDA 2019) at 4 (trial court answers omitted; party designations modified).

Keystone raises three issues on appeal at 157 EDA 2020.

- 5 -

1.Whether the trial court erred in issuing the December 12, 2019 [o]rder for lack of jurisdiction pending Keystone's timely appeal to the Superior Court six months earlier?

2.Whether the trial court [lacked authority to] compel[] Keystone [to] post an appeal bond under Rule 1701(b)(1)?

3. [Whether the trial court contravened Keystone's appeal rights under the Pennsylvania Constitution by] conditioning [] Keystone's timely appeal to the Superior Court [upon the placement of] an appeal bond?

Keystone's Brief (157 EDA 2020) at 4 (trial court answers omitted).

In Keystone's first issue at 2287 EDA 2019, it argues that the trial court erred in denying its motion for a new trial based upon admission of testimony that Keystone terminated the employment of McCanns, the driver of the ambulance, after the accident. Keystone's Brief (2287 EDA 2019) at 12. In Keystone's view, terminating McCann's employment constituted a subsequent remedial measure, which is not admissible under Pennsylvania Rule of Evidence 407 to prove negligence. *Id.* Keystone did not cite to any Pennsylvania cases. Instead, after asserting that Rule 407 is similar under federal and state law, Keystone points to various federal precedents and case law from our sister states, which have held that disciplinary action and employee discharge constitute inadmissible subsequent remedial measures. *Id.* at 12-13.

We review a challenge to the denial of a post-trial motion for a new trial based upon alleged errors in evidentiary rulings using the following standard.

- 6 -

> The Superior Court's standard for reviewing the trial court's denial of a motion for a new trial is whether the trial court clearly and palpably abused its discretion or committed an error of law which affected the outcome of the case. We will reverse the trial court's denial of a new trial only where there is a clear abuse of discretion or an error of law which controlled the outcome of the case. The trial court abuses its discretion when it misapplies the law or when it reaches a manifestly unreasonable, biased or prejudiced result. Abuse of discretion may occur through an honest, but erroneous use of discretion. A new trial may not be granted merely because the evidence conflicts and the jury could have decided for either party. The grant of a new trial is appropriate, however, where the jury verdict may have been based on improperly admitted evidence.

*Rohe v. Vinson*, 158 A.3d 88, 95 (Pa. Super. 2016). "Moreover, the admission or exclusion of evidence is within the sound discretion of the trial court. In reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law." *Blumer v. Ford Motor Co.*, 20 A.3d 1222, 1226 (Pa. Super. 2011).

Pa.R.E. 407, upon which Keystone relies in advancing its evidentiary claim, provides as follows.

> When measures are taken by a party that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible against that party to prove: negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction.

> But the court may admit this evidence for another purpose such as impeachment or — if disputed — proving ownership, control, or the feasibility of precautionary measures.

Pa.R.E. 407 (bullets omitted). Rule 407 is premised upon the common law subsequent repairs doctrine which "precludes use of subsequent remedial

- 7 -

measures to prove fault or negligence." ***Duchess v. Langston Corp.***, 769 A.2d 1131, 1138 (Pa. 2001), *citing **Baron v. Reading Iron Co.***, 51 A. 979 (Pa. 1902) (announcing adoption of the subsequent repairs doctrine in Pennsylvania).

Our review of the record reveals that prior to trial, Keystone filed a motion *in limine* seeking to preclude Rodriguez's introduction of evidence regarding its termination of McCanns' employment and his positive drug screen. As the motion was argued off the record, few details appear in the notes of testimony regarding McCanns' termination. In placing the ruling and his objection to it on the record, Keystone's counsel explained, "McCanns, as represented to Your Honor, was fired as a result of a positive drug screen immediately subsequent to this injury." N.T., 1/29/2019, at 4. The trial court then explained its ruling as follows.

> What I ruled was that since there's no expert to determine whether or not any alleged drugs in your client's employee's system had anything to do with the cause of the accident, then that's not relevant. However, the fact that he was fired for not adhering to company policy, without any mention of the fact that he had drugs in his system, is what I'm permitting the plaintiff to get into evidence.

***Id.*** at 4-5. Rodriguez's counsel indicated he had nothing to add. ***Id.*** at 5.

During the cross-examination of Lundberg, who was employed by Keystone and riding in the back of the ambulance at the time of the accident, Rodriguez's counsel asked Lundberg about McCanns' employment status. The following exchange occurred:

Q. And the driver of the ambulance was an employee of Keystone?

A. That's correct.

Q. And he's actually a long-time friend of yours; is that correct?

A. Also correct.

Q. And you've known him since high school, I believe you testified to?

A. Correct.

Q. Did you help him get this job?

A. No.

**Q. And you're aware that he was terminated after the accident, correct?**

**A. Correct.**

Q. And you don't know what the speed limit was on that road that you were on at the time of the accident, correct?

A. Correct.

[Rodriguez's counsel]: That's all I have.

N.T., 1/30/2019, at 121 (emphasis added).[3]

The trial court offered the following analysis of Keystone's claim that

the termination of McCann's employment was inadmissible under Rule 407.

---

[3] Keystone did not object to this testimony. Nevertheless, Keystone preserved its objection through its motion *in limine*. **See** Pa.R.E. 103 (providing that a party may preserve an error by filing a motion *in limine* and need not renew the objection once the trial court rules definitively upon it).

First, the court asserts that there are no cases in Pennsylvania supporting Keystone's position that Rule 407 prohibits evidence of termination of employment. Trial Court Opinion, 5/18/2020, at 8. Next, relying on an outdated version of Rule 407,[4] the trial court explained its view that Rule 407 is geared towards a situation such as a

> defective sidewalk that is repaired after a person trips on the defect. Had the remedial measure been previously taken, then there would be a less likely chance of the fall. Rule 407 clearly prohibits the admission of such evidence unless it fall[s] within [an exception to the rule].
>
> In this case, the firing of the driver by Keystone was not an action that **if taken previously** may have prevented this incident, as the driver was fired **directly** as a result of this incident giving rise to the instant litigation. Therefore, Rule 407 is not applicable in this situation.

---

[4] The version cited by the trial court was repealed and revised in 2013. Prior to 2013, the rule provided as follows.

> When, after an injury or harm allegedly caused by an event, measures are taken which, **if taken previously**, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove that the party who took the measures was negligent or engaged in culpable conduct, or produced, sold, designed, or manufactured a product with a defect or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for impeachment, or to prove other matters, if controverted, such as ownership, control, or feasibility of precautionary measures.

Pa.R.E. 407 (effective 1/1/2003 to 3/17/2013) (portion relied upon by the trial court emphasized). Although the trial court's reliance on the outdated rule was clearly in error, both versions of the rule express the concept that post-accident measures are inadmissible to prove negligence.

Trial Court Opinion, 5/18/2020, at 9 (emphasis in original); ***see also id.*** at 11 ("His firing would not change the negligent facts leading up to the immediate cause of the incident.").

Keystone argues that the trial court's reasoning is circular: if it is true that Keystone fired the driver because of the incident, then it is also true that the accident would have been less likely to occur if it had fired the driver previously. ***See*** Keystone's Brief (2287 EDA 2019) at 16-17. We agree. The trial court's example appears to assume that the hypothetical defendant was aware that the sidewalk was defective and that fixing it after the fact demonstrated that it should have fixed it previously, thereby preventing the fall. Conversely, the trial court reasons that Keystone would not have fired the driver before the accident because it did not know until after the episode that the driver was negligent. Rule 407, however, does not suggest that a defendant's actual prior knowledge plays a role in admissibility. In fact, part of the justification of Rule 407 is that a defendant's after-acquired knowledge should not be used to assess the duty of care before an accident. ***Duchess***, 769 A.2d at 1138 n.7, *quoting* ***Baron***, 51 A. at 980 (explaining that in some cases, an accident might prompt "a prudent and well-meaning defendant [to] guard[] against the recurrence of an accident [it] had no reason to anticipate"). It is up to the factfinder to decide whether the sidewalk was defective or the driver was negligent at the

time of the accident, not the trial judge while determining the admissibility of evidence.

Moreover, for purposes of a Rule 407 analysis, there is no material difference between a defective sidewalk and a negligent driver. Whether an accident is caused by a faulty sidewalk or a driver's negligence, the law supports the defendant's decision to prevent future harm by using its after-acquired knowledge to fix the sidewalk or fire the employee driver. *See Duchess*, 769 A.2d at 1137 (explaining that part of Rule 407's "aim is to encourage measures that further necessary or added safety, or at least to avoid discouraging such measures, by removing the concern that they will be employed adversely in an action at law").

This Court long ago addressed whether the termination of an employee's employment after an accident was admissible to prove that the employee and/or employer was negligent in the accident. This Court's decision in *Buchanan v. Flinn*, 51 Pa. Super. 145 (Pa. Super. 1912), stemmed from an injury to Buchanan after his car collided with a car driven by Flinn's chauffeur. Flinn discharged his chauffeur after the accident. At trial, Buchanan cross-examined Flinn about the employee's discharge. The trial court made a statement implying that the jury should consider that the discharge may bear upon whether the chauffeur had been negligent at the time of the accident. *Id.* at 150.

On appeal, this Court declared admission of the statement and the trial court's instruction constituted error pursuant to the subsequent repairs doctrine announced in **Baron**.

> The taking of precaution against the future cannot be held to be an implied admission of liability for what had theretofore taken place. An employer might discharge his employee under such circumstances because he had not avoided the accident, even if he were not to blame for producing it, and the apprehension of timid members of his family might well induce him to change his driver, even if his own judgment did not approve of such act.

**Buchanan**, 51 Pa. Super. at 151; **accord Larch v. Haverford State Hosp.**, 620 A.2d 37, 40–41 (Pa. Cmwlth. 1993) (holding testimony about reprimand to employee who left housekeeping cart unattended was inadmissible in wrongful death case where hospitalized patient died from ingesting toilet cleaner obtained from the unattended cart because the reprimand was a "subsequent remedial measure used for the purpose of imputing antecedent negligence" to the employer). Based on the forgoing, the trial court erred by permitting testimony about Keystone's termination of the driver's employment to prove the driver was negligent in causing the accident.

Anticipating that we may rule in such a fashion, the trial court alternatively supported its admission of such evidence by noting that Rule 407 permits remedial measures to be introduced to impeach a witness through confrontation with the measure. In other words, the trial court suggests that elicitation of the employment termination on

cross-examination of Lundberg was to impeach Lundberg's denial that McCanns was driving carelessly. Trial Court Opinion, 5/18/2020, at 9.

As noted *supra*, Rule 407 permits the introduction of subsequent remedial measures for purposes other than proving negligence or culpability, including impeachment, or ownership, control, or the feasibility of precautionary measures where they are disputed. Pa.R.E. 407. The trial court's alternate analysis fails for two reasons.

First, Lundberg did not deny that McCanns had been fired or insist that McCann's employment was terminated for a different reason. Simply because Lundberg's testimony implied McCanns drove cautiously does not mean Rodriguez could introduce the subsequent remedial measure under the guise of impeachment. Were we to hold that this constituted impeachment, the exception would swallow the rule.

Second, the trial court did not instruct the jury to consider the testimony only for the limited purpose of impeachment. Therefore, there was a substantial risk that the jury considered McCanns' termination as an implicit admission of Keystone's negligence. In fact, Rodriguez's counsel told the jury to do so. Despite argument in her brief on appeal that no explanation was provided to the jury as to the reason or timing of the termination, **see** Rodriguez's Brief at 12, Rodriguez's counsel highlighted the testimony in closing argument amid assertions that McCanns — and therefore Keystone — was at fault for the accident. Immediately following

argument that the jury should credit Rodriguez's testimony that McCanns was driving too fast for the conditions, Rodriguez's counsel said, "[r]emember that the driver was terminated **because of this accident**. So I submit to you that the defendant is negligent and caused the injuries suffered by Ms. Rodriguez." N.T., 1/31/2019, at 14 (emphasis added).

Introduction of the evidence of termination without meeting a valid exception violated Rule 407. Both Rodriguez and the trial court urge us to find harmless error, contending references to McCanns' termination was brief and other evidence was convincing and overwhelming. Trial Court Opinion, 5/18/2020, at 11; Rodriguez's Brief at 13. But our review of the record indicates that the improperly admitted evidence could have impacted the jury's verdict. While the mention of McCanns' termination during sworn testimony was slight, we agree with Keystone that Rodriguez's counsel "made sure the error was also harmful" during closing arguments. Keystone's Brief (2287 EDA 2019) at 16. Counsel urged the jury to find Keystone negligent precisely because Keystone fired McCann. This is the type of harm Rule 407 was designed to prevent. Much of the evidence regarding negligence came down to Rodriguez's assertion that McCann was driving too fast for the conditions versus Lundberg's contention that McCann was driving more slowly and appropriately. While the jury was within its discretion to credit one witness over the other, we cannot rule out the likelihood that the jury rendered its verdict because of the erroneously

- 15 -

admitted evidence and subsequent argument that Keystone terminated McCanns' employment because McCanns acted negligently.[5] The "potentially pernicious effect" of admitting evidence of the driver's employment termination "warrants a new trial." **Rohe**, 158 A.3d at 101.

Based upon the foregoing, we hold the trial court erred when it denied Keystone's motion *in limine* and allowed at trial evidence of McCanns'

---

[5] We recognize that in Keystone's closing argument, Keystone's counsel told the jury, "You did hear that the driver was terminated as a result of this accident and that might have been — I don't get involved in company policy decisions, but that might have been an appropriate thing for them to do." N.T., 1/31/2019, at 20. Later in the argument, counsel added,

> You heard Mr. Lundberg say that he felt the vehicle slip on the trolley tracks, which may excuse the driver's actions. Quite frankly, I am not sure it excuses the driver's actions sufficiently for you to find this vehicle was not driven negligently. So on question 1: Do you find the defendant negligent? Yes or No? I don't think you're going to spend a lot of time on that question, quite frankly. I think you're good jurors. You paid attention to the evidence. I think you're going to find that the driver was negligent.

**Id.** at 21-22.

Rodriguez argues Keystone conceded negligence by this argument and thereby negated the prejudice of the admission of the evidence of McCanns' employment termination. Rodriguez's Brief (2287 EDA 2019) at 13. But by this point, the trial court had denied its motion in *limine*, the evidence came in during trial, and Rodriguez's counsel highlighted the information in the closing argument. Having already preserved its objection, Keystone chose to respond to the error by addressing the comments directly in its closing argument. Our job is to determine whether the "jury verdict may have been based on improperly admitted evidence," **Rohe**, 158 A.3d at 95, not to decide whether counsel's strategy for dealing with the harmful effect of the error may have contributed to the verdict.

termination of employment for the purpose of proving negligence. The erroneous admission of this evidence was not harmless error under the facts of this case, and Keystone should have a new trial.[6]  Accordingly, we vacate the judgment against Keystone and remand the case at 2287 EDA 2019. Furthermore, we dismiss the appeal at 157 EDA 2020 as moot.[7]

At 2287 EDA 2019, judgment vacated; case remanded for further proceedings.  At 157 EDA 2020, case dismissed as moot. Jurisdiction is relinquished.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: <u>7/23/2021</u>

---

[6] Based on our disposition of Keystone's first issue, we do not address the second and third issues pertaining to damages.

[7] *See Parliament Industries, Inc. v. William H. Vaughan & Co., Inc.*, 468 A.2d 450, 451 (Pa. 1983) (quashing appeal seeking to increase amount of security as moot because the appeal for which the bond and security were required under Pa.R.A.P. 1731 had been adjudicated and remanded to the trial court for further proceedings).