Howard Jay JOSEPHS, Appellant,

v.

HARRIS CORPORATION, a
Delaware Corporation.

No. 81–2159.

United States Court of Appeals,
Third Circuit.

Argued Feb. 19, 1982.

Decided May 13, 1982.

Arthur D. Rabelow (argued), Artzt & Rabelow Associates, Bensalem, Pa., for appellant.

Charles W. Craven (argued), John P. Penders, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, Pa., for appellee, Harris Corp.

Before ADAMS and SLOVITER, Circuit Judges, and STERN, District Judge.*

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

In this products liability action filed in federal court on the basis of diversity jurisdiction, plaintiff Howard Jay Josephs appeals following a jury verdict in favor of the defendant, Harris Corporation. Josephs was injured while cleaning a printing press which was manufactured by Harris Corporation in 1963, and sold in a used condition by Harris to Josephs' employer, Pocono Press, Inc., in 1973. Josephs alleged that his injuries were caused by a defective design and by Harris' failure to adequately warn and instruct on the safe operation of the press. After a three-day trial, the jury found by special interrogatory that "the Harris Press [was not] defective at the time of its sale to Pocono Press." Accordingly, judgment was entered for the defendant and plaintiff appeals.

Plaintiff claims (1) that the court erred in granting defendant's in limine motion which precluded plaintiff from introducing any testimony relating to standards and publications promulgated and published subsequent to 1963, the year that defendant manufactured the press in issue, when in fact defendant resold the press to plaintiff's employer in 1973; (2) that the court erred in refusing to allow plaintiff redirect examination of his expert witness and cross-examination of defendant's witnesses with regard to standards, publications or textual material adopted or published subsequent to 1963; (3) that the court erred in excluding evidence of or reference to remedial measures undertaken and warnings issued by defendant subsequent to plaintiff's injury; and (4) that the court erred in denying plaintiff's motion to compel answers to interrogatories requesting information as to prior accidents involving the press which injured Josephs and as to similar Harris presses.

### II.

### FACTS

On the date of the accident, June 18, 1979, Josephs was employed for the summer by Pocono Press, Inc.[1] as a pressman's helper. He was nineteen years of age and had

---

* Hon. Herbert J. Stern, United States District Judge for the District of New Jersey, sitting by designation.

1. Pocono Press, Inc. is a small family run corporation. Its president, Jay Josephs, is the father of the plaintiff.

begun working at Pocono Press a few weeks earlier. As a pressman's helper, Josephs' duties included cleaning the printing press at the end of the day.

The press in question, Harris Model LUM, stood over seven feet tall and had five different control stations. At each control station there was a series of three buttons, positioned vertically. The top button was labeled "safe", and when pushed in the machine would not run. This button also had a lock out feature, i.e., it was surrounded by a ring which when rotated clockwise prevented the press from being operated from any control station. The middle button was labeled "jog" and when depressed the press ran forward; when released the press stopped by inertia. The third button was labeled "reverse" and operated in the same manner as the "jog" button except that the press ran in the opposite direction.

In order to clean the LUM press, it was necessary for someone to crawl under the press and wipe the cylinders. On June 18, 1979, Josephs was lying underneath the press wiping the second, or bottom cylinder, with a cleaning cloth and solvent. Only a small portion of the cylinder is exposed beneath the press. After cleaning the exposed portion, Josephs had to use the "jog" button to inch the cylinder around, thus exposing more of the cylinder's surface. The process of jogging and wiping would normally continue until the entire surface of the cylinder was cleaned.

The control box that is used while cleaning the cylinder is located underneath the press. Because of the way Josephs was positioned, he could not see the control buttons and the cylinder at the same time. He was using his left hand to push the "jog" button and his right hand to wipe the cylinder. Although Josephs cannot recall the actual accident, and there was no one watching him clean the cylinder, it appears that he was pushing the jog button to advance the cylinder when the cleaning rag in his right hand got caught in the cylinder. His hand was dragged in with the cleanup rag, causing the injury for which suit was brought, a crush amputation of the thumb and portions of the first three fingers.

In face of the jury's adverse verdict, Josephs must demonstrate that the court's evidentiary rulings and discovery rulings which he challenges were not only erroneous but were so prejudicial as to amount to reversible error. Fed.R.Civ.P. 61; Fed.R. Evid. 103(a).

## III.

### EVIDENTIARY RULINGS

Josephs challenges the court's action in granting Harris' in limine motion presented and ruled upon the morning the trial began which, in effect, limited Josephs' proof of the alleged defective condition to the date of manufacture, 1963, rather than the date of sale to Josephs' employer, 1973. The court's order precluded Josephs from introducing at trial: "Any evidence relating to standards, publications or text materials adopted or published subsequent to the manufacture of the Harris Press in 1963." App. at 79a, 82a. Inexplicably, although all of plaintiff's evidence was required to focus on the date of manufacture, the time frame referred to in the interrogatory given to the jury was "the time of [the] sale to Pocono Press."

Although the record does not contain any statement by the district court as to the basis for its evidentiary rulings limiting the introduction of post-1963 evidence, the parties appear to have understood that the court ruled that in determining whether a defendant will be held strictly liable for a defective product under § 402A of the Restatement (Second) of Torts, the defectiveness of the product must be decided by reference to the date of manufacture rather than the date of sale. We believe the court erred in so ruling. The Pennsylvania Supreme Court has held that § 402A of the Restatement (Second) of Torts is the applicable law in Pennsylvania. *See Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966). The language of § 402A manifestly applies to the act of "selling" rather than "manufacturing." It provides:

(1) One who *sells* any product in a defective condition unreasonably dangerous to

the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the *seller* is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the *seller* has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the *seller.*

Restatement (Second) of Torts § 402A (1965) (emphasis added).

A further indication that this section focuses upon the date of the sale of the product rather than the date of its manufacture can be gleaned from the official comments to § 402A. They state, in relevant part:

g. *Defective condition.* The rule stated in this Section applies only where the product is, *at the time it leaves the seller's hands,* in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him. The seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is consumed. The burden of proof that the product was in a defective condition *at the time that it left the hands of the particular seller* is upon the injured plaintiff; and unless evidence can be produced which will support the condition that it was then defective, the burden is not sustained.

Safe condition at the time of delivery by the seller will, however, include proper packaging, necessary sterilization, and other precautions required to permit the product to remain safe for a normal length of time when handled in a normal manner.

Restatement (Second) of Torts § 402A, Comment g (emphasis added).

By its express language, § 402A applies to sellers engaged in the business of selling the relevant product. There has been no contention that Harris does not fall within this category. The policy of § 402A is to protect the ultimate user for defects in goods caused by those who put such goods in commerce. Had Harris sold the used press manufactured by another, it would be liable if the product was defective at the time of sale. There is no reason why the fact that Harris was the manufacturer as well as the subsequent seller should change this result.[2] Thus, we hold that under § 402A the relevant date in determining defective condition is the date of sale by a seller covered by the section, rather than the date of manufacture of the product.

In order to determine whether the court's ruling caused prejudicial error, it is necessary to consider the context in which the issue arose. It was Josephs' contention that the press was defective because it did not have two jog buttons on the underside of the press requiring the simultaneous depression of both buttons, using both hands, in order to advance the cylinder. If the press had been designed in that manner, both hands would have been required to push the buttons, so that it would have been impossible for Josephs' hand to have been caught in the moving cylinder. Josephs sought to prove this theory by the testimony of his expert witness, Stanley Jakubowski, who testified that the press was not safe because the single jog button permitted the operator to press the jog button with his left hand while simultaneously wiping the moving cylinder with his right hand. App. at 131a–132a. It was his opinion that a properly designed press would require utilization of a two-button jog necessitating the operator's simultaneous depression of both buttons, using both hands, in order to advance the cylinder. App. at 132a. Defendant in its turn presented the

---

**2.** The record does not disclose specific information as to the ownership or use of the press in question between 1963 and 1973.

testimony of its expert, Dr. Louis Sander, who testified that under the proper method of cleaning the press, which he described, the accident would not have occurred, and that the press in question was not defectively designed.

It is plaintiff's position that he was prejudiced by the court's in limine ruling because he was erroneously limited in questioning his expert on direct examination, that his expert was unduly circumscribed during the cross-examination by defendant, that he was erroneously prevented from redirect examination of his own expert, and that he was unduly circumscribed in his cross-examination of defendant's expert. We have examined the record and agree with plaintiff's contention that the court's erroneous in limine ruling was prejudicial. In his direct testimony, Mr. Jakubowski was unable to support his expert opinion by reference to post-1963 standards, regulations and textual material which would have required a double-jog button. On direct examination, Josephs was limited to asking his expert, Mr. Jakubowski, to give his opinion about the defectiveness of the product at the time it was manufactured in 1963. *See, e.g.,* App. at 131a–135a. On cross-examination Mr. Jakubowski testified that he did extensive research in preparation for this case as to the references regarding safety and design of presses of all types. He was then subjected to the following scathing cross-examination by defense counsel:

Q Would you tell the jury how much time you spent in that library with all those learned text [sic] trying to find something that said that a printing press in 1963 should have a two-button jog on it?

A I spent about 12 hours all [told] in that two-month period of time looking for references about the operation of printing presses and safety involving printing presses.

Q And isn't it a fact that you were not able in all those books in the library to find one printing press which had a two-button jog on it?

A In all that time I wasn't able to find any reference to the requirements for a two-button jog on a printing press.

App. at 138a. Because Mr. Jakubowski was limited to the 1963 period, he was unable to reply that there were in fact standards, publications, and/or textual materials as of 1973 which did require a double-jog button on presses. Mr. Jakubowski's discomfort at being required to limit his testimony to 1963 is evidenced in the following question and answer on cross-examination:

Q So that the only way to prevent this kind of accident is to have the man properly trained to use the lock-out, whether it is a one-button or it is a two-button?

A In—well, I am trying to stay within the time frame that the press was designed, and there are many ways to prevent the accident from occurring. I mentioned one easy way that it could have been prevented.

App. at 150a. On redirect examination, plaintiff's counsel sought to question Mr. Jakubowski to clarify that he had been limited in his opinion with regard to 1963 but the court sustained the objection to such testimony. App. at 153a–155a. Certainly, the credibility and weight which the jury gave to Mr. Jakubowski's testimony could have been affected by his inability to bolster his opinion by reference to additional sources.

Defendant's witness, Karl Kist, who was its project engineer in charge of designing the press in question, testified that they did not use the double-button jog which would have cost approximately $25 per press, because "we just didn't think it was necessary." App. at 161a. Because of the in limine ruling, plaintiff's counsel was unable to question Mr. Kist as to whether standards and other material published after 1963 would have affected his opinion as to the necessity of a two-button jog in 1973. In fact, on redirect examination of Mr. Kist, defendant's counsel elicited from him testimony that there is nothing about two-button jogs in the 1954 American Standard Safety Code for Controls and Signaling Devices for Graphic Arts Presses, sponsored by the National Safety Council, which was in effect in 1963 when the press was designed. App. at 184a–185a. Plaintiff was unable to engage in any recross-examination of Mr.

Kist regarding material published after 1963 but before 1973, the date we have found to be relevant. Similarly, defendant's expert, Dr. Sander, testified that it was his opinion that a two-button control is not necessary at the jogging station of the Harris LUM press. App. at 196a. Again, plaintiff was unable to cross-examine Dr. Sander using material which might have led a reasonable jury to a contrary conclusion.

From our review of the record, we believe that the court's erroneous in limine limitation unduly circumscribed plaintiff in its examination and cross-examination of the expert witnesses. Further, we believe that there is a reasonable likelihood that the limitation imposed by the court could have affected the jury's impression as to the basis of the expert testimony and the credibility of the experts. We cannot conclude that the court's erroneous limitation was harmless, and accordingly, we will remand for a new trial.

Plaintiff also objects to the court's exclusion of evidence of standards, publications, and materials proffered by plaintiff which were published or promulgated subsequent to 1963. For example, the general OSHA regulations for Machine Guarding, 29 C.F.R. § 1910.212(a)(1) (1975), and specific OSHA regulations for Mechanical Power Presses, 29 C.F.R. § 1910.217 (1975), as reprinted, together with a checklist, in the 1975 Edition of the OSHA Standards Handbook for Small Businesses, see app. at 235a–248a, require two-hand trip devices or other safeguards. The 1975 OSHA regulations are substantially the same as the 1972 OSHA regulations.[3] No reason was given by the court for the exclusion but, as we have held, if such material was excluded on a temporal basis, the ruling was erroneous.

■ Defendant contends the standards are inapplicable to printing presses and hence are irrelevant. That is an issue which we leave to the district court on remand. In doing so, we note, however, that safety codes and standards may be admissible when they are prepared by organizations formed for the purpose of promoting safety. *See Johnson v. William C. Ellis & Sons Iron Works, Inc.*, 609 F.2d 820, 822 (5th Cir. 1980), *modifying*, 604 F.2d 950, 957–58 (5th Cir. 1979); *Dorsey v. Yoder Co.*, 331 F.Supp. 753, 768–69 (E.D.Pa.1971), *aff'd without opinion*, 474 F.2d 1339 (3d Cir. 1973); *Bunn v. Caterpillar Tractor Co.*, 415 F.Supp. 286, 291–92 (W.D.Pa.1976), *aff'd without opinion*, 556 F.2d 564 (3d Cir.), *cert. denied*, 434 U.S. 875 (1977). *See also Seese v. Volkswagenwerk A.G.*, 648 F.2d 833, 846 (3d Cir.), *cert. denied*, 454 U.S. 867, 102 S.Ct. 330, 70 L.Ed.2d 168 (1981). Defendant's additional contention that the introduction of such evidence would be confusing to the jury must be evaluated by the trial court with reference to Federal Rule of Evidence 403 which permits the trial court to exclude evidence "if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

■ Josephs also claims that the court erred in granting the defendant's in limine motion which precluded "Any evidence or reference to any subsequent remedial measure undertaken by Harris and in particular the letter of November 14, 1979 and the warning signs which were enclosed with it." App. at 79a, 82a. Josephs proffered evidence that subsequent to the accident, Harris sent a letter containing instructions on the proper way to clean the printing presses by use of the lock-out device on the press and included a warning sticker to be placed on the press itself cautioning against operation of the press in the manner which Josephs had used on the day of his injury.

We consider the relevance of these remedial measures in light of Rule 407 of the Federal Rules of Evidence. That Rule provides:

When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is

---

**3.** Accordingly, we do not reach the question on this appeal of the relevance or admissibility of standards published subsequent to the date of

sale. *See Curtis v. District of Columbia*, 363 F.2d 973 (D.C.Cir.1966).

not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

This court has held that Fed.R.Evid. 407 is applicable to products liability actions based on § 402A of the Restatement. *See Knight v. Otis Elevator Co.*, 596 F.2d 84, 91–92 (3d Cir. 1979). *See also Bauman v. Volkswagenwerk Aktiengesellschaft*, 621 F.2d 230, 232–33 (6th Cir. 1980). Applying Rule 407, we find that in this case neither ownership, control nor feasibility is controverted, nor has plaintiff suggested another permissible purpose for which such evidence could be considered. Accordingly, we hold that the district court did not err in excluding the evidence of remedial measures proffered by plaintiff.

## IV.

### DISCOVERY RULING

■ As part of his discovery, Josephs served interrogatories on the defendant Harris requesting, *inter alia*, the name of any person known to Harris to have been injured by the LUM and nine other models of Harris presses.[4] Harris objected to the interrogatories as being irrelevant, oppressive, and unduly burdensome, and failed to reply. Josephs filed a motion for an order compelling discovery; the district court denied Josephs' motion, as well as his subsequent motion for reconsideration. The basis for the district court's ruling denying this discovery does not appear on the record. Under the Federal Rules of Civil Procedure, discovery is not limited to information which is admissible at trial but instead is allowed "if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R. Civ.P. 26(b)(1). In this case, the information requested was patently relevant to the issue of duty to warn and may have led to relevant evidence regarding the existence of a defect. *See Bowman v. General Motors Corp.*, 64 F.R.D. 62 (E.D.Pa.1974) (Becker, J.) (permitting discovery of information about the design and testing of models allegedly similar to the one at issue in that case). The district court's discovery ruling in this case precluded plaintiff from discovery of data relating to the issue of the safety record of the press in question although the district court apparently instructed the jury that the safety record of that press was relevant in connection with its consideration of the design of that press.[5]

■ Harris claims that the information sought was burdensome and oppressive.

| MODEL | NUMBER OF COLORS | NORMAL SIZE |
|---|---|---|
| LXE | 2 | 22×29 |
| LTP | 2 | 24×36 |
| LWQ, L238A | 2 | 25×38 |
| LWQ, LWR, LWR-M, L438A | 4 | 25×38 |
| L638A | 6 | 25×38 |

(b) Identify those persons injured while allegedly engaged in cleaning the second cylinder and, if any of those persons had an attorney, set forth the name and address of said attorney.

(c) As to each and every person identified in 52(b), indicate whether legal action was instituted and, if so, indicate the court term and number of said legal action.
App. at 29a–31a.

---

4. Plaintiff's Interrogatories to defendant, numbered 51 and 52, were:

51. (a) State the name, address and dates of injury of any or all persons known to Harris and/or its insurance carrier to have been injured through the use of a Harris two-color offset printing press, Model LUM during the period from the date the model was first manufactured to the present, and

(b) Identify those persons injured while allegedly engaged in cleaning the second cylinder and, if any of those persons had an attorney, set forth the name and address of said attorney.

(c) As to each and every person identified in 51(b), indicate whether legal action was instituted and, if so, indicate the court term and number of said legal action.

52. (a) State the names, addresses and dates of injury of any and all persons known to Harris and/or its insurance carriers to have been injured through the use of the following Harris Presses,

5. The court's instructions to the jury were apparently not transcribed since they do not appear in the record on appeal. We rely for this point on the statement of plaintiff's counsel on oral argument before us.

However, the mere statement by a party that the interrogatory was "overly broad, burdensome, oppressive and irrelevant" is not adequate to voice a successful objection to an interrogatory. On the contrary, the party resisting discovery "must show specifically how ... each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296–97 (E.D.Pa.1980) (citations omitted). In this case Harris failed to make the requisite showing. In light of our remand because of the court's erroneous exclusionary ruling, we need not decide whether the court's failure to require defendant to supply the requested discovery information would in itself have warranted a reversal. On remand, however, the court should give plaintiff the opportunity to elicit the appropriate information.

For the reasons set forth above, we will vacate the judgment for defendant and remand this matter to the district court for a new trial.