Joseph **KELLY** and Cynthia Kelly, Appellants,

v.

**CROWN EQUIPMENT COMPANY,** Appellee.

**No. 91–1908.**

United States Court of Appeals, Third Circuit.

Argued May 20, 1992.

Decided July 29, 1992.

Rehearing and Rehearing In Banc Denied Aug. 25, 1992.

---

Walter J. Timby, Jr. (argued), Timby, Brown & Timby, Philadelphia, Pa., for appellants.

Morton F. Daller (argued), Eileen M. Johnson, Rawle & Henderson, Philadelphia, Pa., for appellee.

Before: HUTCHINSON, COWEN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge

Joseph Kelly and his wife Cynthia Kelly ("plaintiffs") appeal the order of the district court denying their motion for a new trial in a products liability action under Pennsylvania law against Crown Equipment Company ("defendant"). Defendant removed the case to federal court as autho-

rized by 28 U.S.C. § 1441, invoking the court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. This court has jurisdiction under 28 U.S.C. § 1291.

## I. FACTUAL BACKGROUND

Joseph Kelly was injured in the course of his employment when he dismounted from a stock picker forklift. The forklift was constructed so that the operator could stand on a platform which could be lowered closer to the ground for a safe exit. Rather than lowering the platform and stepping off, however, Kelly jumped off the equipment from a height of one and one/half or two feet above the ground. The O-ring on his safety belt caught on a ring attached to a pole at the rear of the platform. He was jerked back onto the platform and injured his back.

Plaintiffs sued defendant, the manufacturer of the forklift, under a strict liability theory. They alleged that the forklift was defectively designed within the provisions of Section 402A of the Restatement (Second) of Torts (1965). A jury returned a verdict for the defendant finding, in answer to a special interrogatory, that the forklift was not defective. Accordingly, the district court entered judgment for the defendant. Subsequently, the court denied plaintiffs' motion for a new trial.

## II. DISCUSSION

On appeal, plaintiffs allege that the district court erred in denying their motion for a new trial. This court reviews the district court's ruling for abuse of discretion. *Honeywell v. American Standards Testing Bureau,* 851 F.2d 652, 655 (3d Cir. 1988), *cert. denied,* 488 U.S. 1010, 109 S.Ct. 795, 102 L.Ed.2d 787 (1989). To the extent the denial was based upon a legal precept, our review is plenary. *Id.*

## A. Application of Federal Evidentiary Rule 407

Plaintiffs sought to introduce evidence at trial that the defendant altered the design of its forklifts after the manufacture of the forklift here involved, but before the accident. Their proffer showed that defendant removed the ring on the pole and added a mechanism that lowered the pole into the platform when the operator entered or exited the platform. The district court excluded this post-manufacture, pre-accident evidence under Rules 407 and 403 of the Federal Rules of Evidence. Thus, this appeal.

Federal Rule of Evidence 407 provides:

When, *after an event,* measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is *not admissible to prove negligence or culpable conduct* in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

(emphasis added). This court has consistently held that Rule 407 applies to strict liability suits even though the language in the rule refers to inadmissibility to prove *negligent or culpable conduct. Josephs v. Harris Corp.,* 677 F.2d 985 (3d Cir.1982); *Knight v. Otis Elevator Co.,* 596 F.2d 84 (3d Cir.1979).[1] We have also held that Rule 407 applies to exclude evidence of pre-accident remedial measures where the manufacturer is sued under a failure to warn theory. *Petree v. Victor Fluid Power, Inc.,* 831 F.2d 1191 (3d Cir.1987) (*"Petree I"*).

Plaintiffs first assert that Rule 407 is inapplicable to strict liability *design defect*

---

1. Our view is in accord with the majority of appeals courts that have considered the question. *Flaminio v. Honda Motor Co. Ltd.,* 733 F.2d 463 (7th Cir.1984); *Grenada Steel Industries, Inc. v. Alabama Oxygen Co.,* 695 F.2d 883 (5th Cir.1983); *Hall v. American Steamship Co.,* 688 F.2d 1062 (6th Cir.1982); *Cann v. Ford Motor Co.,* 658 F.2d 54 (2d Cir.1981). *cert. de-*

*nied,* 456 U.S. 960, 102 S.Ct. 2036, 72 L.Ed.2d 484 (1982); *Werner v. Upjohn Co.,* 628 F.2d 848 (4th Cir.1980), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804 (1981); *Roy v. Star Chopper Co.,* 584 F.2d 1124 (1st Cir.1978), *cert. denied,* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979).

cases. They say that this argument is available to them notwithstanding our previous rulings because in *Josephs* and *Knight* plaintiffs asserted both design defect and failure to warn theories. In addition, they point out that the rule announced in *Petree I* was in the context of liability predicated only on a failure to warn. They rely on this court's explanation in that case that:

> where the manufacturer's liability is predicated on a theory of failure to warn of danger from improper use of a product by the customer, the negligence concept of foreseeability has insinuated itself into the strict liability cause of action.... Consequently the policies supporting Rule 407 counsel exclusion of proof of subsequent remedial measures when offered in strict liability cases as an admission that the product was effective at the time of sale.

*Petree I*, 831 F.2d at 1198 (emphasis added). They contend that, unlike warning cases, concepts of negligence play no part whatsoever in the determination of a manufacturer's liability for a product that was defective *at the time it was sold*. Thus, we must consider whether the policies and goals of Rule 407 would be advanced by applying the exclusionary rule to design defects as well as failure to warn cases.

Rule 407 is based upon two grounds. First, "Rule 407 rejects the suggested inference that fault is admitted when remedial measures are taken subsequent to an injury." *Petree I*, 831 F.2d at 1198. This is because "[s]uch conduct is equally consistent with injury through accident or contributory negligence." *Id.* Secondly, Rule 407 is supported by public policy which encourages manufacturers to make improvements for greater safety.

Exclusion of subsequent remedial evidence, regardless of the theory of the case, advances the policy behind Rule 407 of promoting safety. As one court commented:

The rule ... represents a common sense recognition that people are loath to take actions which increase the risk of losing a lawsuit.... Since the policy underlying Rule 407 not to discourage persons from taking remedial measures is relevant to *defendants* sued under either [negligence or strict liability], we do not see the significance of the distinction. A potential defendant must be equally concerned regardless of the theoretical rubric under which this highly prejudicial and extremely damaging evidence is admitted.

*Cann*, 658 F.2d at 60; *see also Werner*, 628 F.2d at 857 ("From a defendant's point of view it is the fact that the evidence may be used against him [and not the theory of liability] which will inhibit subsequent repairs or improvements."). The reasons for refusing to differentiate between negligence actions and strict liability claims apply with equal force to the more subtle differences between failure to warn and design defect theories.

In our previous cases applying Rule 407 to strict liability actions, we have not distinguished between the failure to warn and the design defect theories of recovery.[2] *Josephs*, 677 F.2d at 991; *Knight*, 596 F.2d at 91–92. We believe that these cases may be read to apply Rule 407 to products liability actions generally regardless of the specific theory advanced.[3] Therefore, plaintiffs' argument that Rule 407 is inapplicable to claims alleging only a design defect is negated by our previous decisions.

◼ Plaintiffs next assert that Rule 407 by its own terms does not govern the admission of evidence of post-manufacture, pre-accident remedial measures relying on the "after an event" language in the rule. In *Petree I* this court considered whether Rule 407 applied to the manufacturer's *pre-accident* conduct. There the defendant began attaching warning labels to its product after some products had been sold without labels, but before plaintiff's accident. This

---

**2.** Like this court, other courts of appeals that have applied Rule 407 to strict liability suits have not distinguished between failure to warn and design defect theories. *See supra,* note 1.

**3.** *See also Flaminio v. Honda Motor Co., Ltd.* 733 F.2d 463 (7th Cir.1984) (applying Rule 407 where only design defect was alleged).

court ruled that the Rule 407 policy of encouraging people to take steps to make their products safer was "equally as supportive of exclusion of evidence of safety measures taken *before* someone is injured by a newly manufactured product, even if those measures are taken in response to experience with an older product of the same or similar design." *Petree I*, 831 F.2d at 1198 (emphasis added).

In reaching its conclusion that the Rule can properly be applied to pre-accident conduct, this court approached the matter in terms of effectuating social policy. It apparently did not confront the language of the Rule which specifically limits its application to measures taken "*after an event . . . which, if taken previously, would have made the event less likely to occur. . . .*" Fed.R.Evid. 407 (emphasis added). *Cf. Huffman v. Caterpillar Tractor Co.*, 908 F.2d 1470, 1481–82 (10th Cir.1990). Nevertheless, since *Petree I* rules directly on this issue we, as a panel, are not free to entertain plaintiffs' argument based upon the language of the rule. IOP Chapter 9.1 [In Banc Consideration] (1990).

■ Plaintiffs next argue that construing Rule 407 to exclude evidence of post-manufacture, pre-accident design changes in a diversity action [4] arguably places the Federal Rules of Evidence in conflict with Pennsylvania law. In *Matsko v. Harley Davidson Motor Co.*, 325 Pa.Super. 452, 473 A.2d 155 (1984), the court held that the Pennsylvania subsequent repair rule, *see Baron v. Reading Iron Co.*, 202 Pa. 274, 51 A. 979 (1902), did not apply in products liability actions. Plaintiffs' argument that state law governs where the Federal Rules of Evidence are inapplicable is obviously foreclosed since we have held that Rule 407 applies in the design defect context. Plaintiffs' reliance on *Moe v. Avions Marcel Dassault–Breguet Aviation*, 727 F.2d 917 (10th Cir.), *cert. denied*, 469 U.S. 853, 105 S.Ct. 176, 83 L.Ed.2d 110 (1984), suggests, however, their belief that state law prevails where a direct conflict arises between federal and state rules on the admissibility of evidence of subsequent remedial measures.

This court applied Rule 407 in *Petree I*, subsequent to the Superior Court's ruling in *Matsko*, without any discussion of conflict of law. To our knowledge, this is the first time a party has challenged the application of Rule 407 on the ground that Pennsylvania law governs. Because of the arguable conflict between the Federal Rules of Evidence and Pennsylvania law, we must determine which law controls. *Salas by Salas v. Wang*, 846 F.2d 897, 905 (3d Cir.1988). In *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the Supreme Court said that where a conflict of law arises in a diversity case, a federal rule of procedure falling within the uncertain area between substance and procedure, must be applied if it is rationally capable of classification as either. *Id.* at 472. Thus, we must apply "the federal rules so long as they can rationally be viewed as procedural." *Salas by Salas*, 846 F.2d at 906.

We cannot accept the view expressed in *Moe v. Avions Marcel Dassault–Breguet Aviation*, 727 F.2d 917, 932 (10th Cir.), *cert. denied*, 469 U.S. 853, 105 S.Ct. 176, 83 L.Ed.2d 110 (1984), that a state's admission of evidence of subsequent change in a product evidences a state's public policy that is so closely related to the cause of action that it must be viewed as substantive. The fact that Rule 407 represents a substantive judgment intertwined with procedural considerations, *Flaminio*, 733 F.2d at 471, does no more than place the rule in "the uncertain area between substance and procedure," *Hanna*, 380 U.S. at 472, 85 S.Ct. at 1144, subjecting it to the *Hanna* conflict of law test.

Rule 407 is one of several relevancy provisions contained in Federal Rules of Evidence 406 through 412. *McInnis v. A.M.F., Inc.*, 765 F.2d 240, 245–46 (1st Cir.1985). It operates on the presumption that undue prejudice is likely in certain situations, *see id.*, expressing a distrust of a jury's ability

---

**4.** In view of our application of Rule 407, we need not consider defendant's argument with respect to Rule 403 relevancy.

to draw the proper inferences from the evidence. *Flaminio,* 733 F.2d at 472. Thus, we conclude that Rule 407 is " 'arguably procedural,' " *Salas by Salas,* 846 F.2d at 905 (quoting *Hanna,* 380 U.S. at 476, 85 S.Ct. at 1146 (Harlan, J., concurring)), and therefore governs in this diversity action notwithstanding Pennsylvania law to the contrary. Our view is in accord with the majority of appellate courts that have considered the issue. *See e.g., McInnis,* 765 F.2d at 245; *Flaminio,* 733 F.2d at 472; and *Grenada Steel Industries v. Alabama Oxygen Co.,* 695 F.2d 883, 885 (5th Cir.1983).

■ Plaintiffs argue, in the alternative, that even if Rule 407 applies, it provides an exception where the evidence is used for impeachment purposes.[5] They contend that the evidence was admissible to impeach defendant's expert, Dr. Watkins, who testified that the forklift involved in the accident was properly designed even though he knew that the design had been altered for more recently manufactured machinery.

In *Petree v. Victor Fluid Power, Inc.,* 887 F.2d 34 (3d Cir.1989) (*"Petree II"*), the defendant's expert testified that use of its hydraulic press posed no inherent danger and that misuse was not reasonably foreseeable. He opined that there was no need, therefore, to affix a warning label to the press. This court held that the trial court impermissibly excluded evidence that the company in fact began using warning labels. That holding was based upon the fact that the proffered evidence would have directly impeached the testimony of the expert that warnings were unnecessary.

Plaintiffs' reliance on *Petree II* to support the admission of the design change evidence here is misplaced. Dr. Watkins testified that the forklift involved in the accident was of an excellent and proper design. Evidence that the forklift's design had been altered does not contradict that statement since alteration did not compel

the conclusion that the first *design* was defective. *Flaminio,* 733 F.2d at 471.

Plaintiffs refer this court, however, to *Public Service Co. v. Bath Iron Works Corp.,* 773 F.2d 783 (7th Cir.1985), cited in *Petree II.* In *Public Service,* the Court of Appeals for the Seventh Circuit reversed the trial court's exclusion of evidence for impeachment purposes where the expert witness testified that the manufacturer advertised that the instructions accompanying its equipment were part of a continuing effort to enable consumers to achieve a particular result. There, the fact that the company modified the plans to include greater detail impeached the witness' testimony that the earlier plans were adequate and that no further direction was necessary.

Dr. Watkins did not make a statement that the forklift's design was the best or the only one possible. He said only that it was an excellent and proper design. Thus, evidence of subsequent changes cannot serve to impeach his statements. Indeed the court in *Public Service* specifically addressed this situation when it stated that evidence was not admissible where it was offered to show that the original instructions "were inadequate because they did not include some arguably better feature that was added in the 1983 plans." *Public Service,* 773 F.2d at 793. Defining the term "impeachment" in a less stringent manner would permit the exception to swallow the rule since "any evidence of subsequent remedial measures might be thought to contradict and so in a sense impeach [a party's] testimony...." *Flaminio,* 733 F.2d at 468.

We therefore conclude that the district court properly excluded the post-manufacture, pre-accident design evidence pursuant to Rule 407.

### B. Disclosure of Expert Witness Testimony

■ Plaintiffs next argue that the defendant failed to comply with a court order to

---

**5.** Although plaintiffs also assert that the evidence was admissible to show feasibility, the argument is without merit since the witness' testimony did not controvert feasibility as is required by the rule. *See Josephs,* 677 F.2d at 991.

supply the opposing party with a report identifying the expert who was going to testify and what was going to be said. In response to the court's inquiry at the beginning of the trial, defendant stated that he would provide the information about the expert witness to opposing counsel in letter form the following day. Plaintiffs received the letter, but requested a copy of Dr. Watkin's expert report. Opposing counsel informed the court that there was no such report and that the letter contained a summary of what the expert would say on the stand. Plaintiffs made no further objections to defendant's disclosure until after the trial. Plaintiffs complain on appeal, however, that they were unable to adequately prepare due to the lack of notice.

The district court, in its opinion considering the motion for a new trial, found that defendant complied with its order in which the court specifically stated on the record that the information could be provided in the form of a letter. Although the disclosure letter is not part of the record on appeal, we find no abuse of discretion in the court's acceptance of the letter as complying with its own earlier directive to the parties concerning disclosure of information pertaining to expert witnesses.

█ Plaintiffs have also asserted error in the fact that another witness testified as an expert without any forewarning. The court determined that this witness, one of defendant's employees, did not testify as an expert and, therefore, defendant was not required to so identify him. Upon review of the record, we agree with the district court that defendant's employee did not testify as an expert when he explained the company's use of the forklift and his personal investigations of the accident. Defendant's counsel specifically limited his direct examination of this witness to non-expert matters as dictated by the court in response to plaintiffs' objections.

### C. Use of the Written Interrogatories

█ During the trial, defendant read aloud an interrogatory that asked whether plaintiffs had made any claims that may have been covered by worker's compensa-

tion. Plaintiffs argue that this reference to possible collateral compensation prejudiced the jury by giving rise to a negative inference that plaintiffs might have already received payment for the injury. They assert that the error must be regarded as harmful notwithstanding the judge's curative instructions.

The court instructed the jury that it must "ignore any reference to workmen's compensation proceedings in this or any other proceeding before, since it has nothing to do with this trial...." In denying the motion for a new trial, the court emphasized that any error related to defendant's reference to worker's compensation was harmless. It reasoned that if the jury inferred that plaintiffs may have already recovered monetary relief, this inference might affect the its award of damages, but not the determination of whether the product was defectively designed. The court pointed out that an inference that a person was previously able to recover against his employer could, in fact, work to plaintiffs' benefit because it would appear that plaintiffs had asserted a successful claim in the past. *See Davin v. Shur–Line Mfg. Co.,* 45 Pa.D. & C.3d 8, 11 (1986).

It is the " 'general rule that if evidence which may have been taken in the course of a trial, be withdrawn from the consideration of the jury by the direction of the presiding judge, that such direction cures any error which may have been committed by its introduction.' " *Lionti v. Lloyd's Ins. Co.,* 709 F.2d 237, 243 (3d Cir.), *cert. denied,* 464 U.S. 995, 104 S.Ct. 490, 78 L.Ed.2d 685 (1983), (quoting *Throckmorton v. Holt,* 180 U.S. 552, 567, 21 S.Ct. 474, 480, 45 L.Ed. 663 (1901)). The general rule arises from our presumption that "a jury will follow an instruction to disregard inadmissible evidence ... unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant." *Greer v. Miller,* 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618 (1986) (citations omitted). Under the circumstances, we agree with

the district court that any error was cured by its instructions.

For the foregoing reasons, we will affirm the order of the district court denying plaintiffs' motion for a new trial.

## SUR PETITION FOR REHEARING

Aug. 25, 1992.

Present: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH and SEITZ,* Circuit Judges.

The petition for rehearing filed by appellants in the above captioned matter having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.

---

* Hon. Collins J. Seitz, Senior United States Circuit Judge, was limited to voting for panel rehearing.