70 F.3d 1201
 43 Fed. R. Evid. Serv. 269, Prod.Liab.Rep. (CCH) P 14,457
Ruby WOOD, Personal Representative of the Estate of Ginger
Wood, Deceased, Plaintiff-Appellant,
v.
MORBARK INDUSTRIES, INC., and Morbark Miss., Inc.,
Defendants-Appellees.
 No. 93-3472.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 18, 1995.
 
 William K. Jennings, DeFuniak Springs, FL, for appellant.
 John W. Wylie, Andela C. Flowers, Kubicki & Draper, Miami, FL, for appellees.
 Appeal from the United States District Court for the Northern District of Florida.
 Before ANDERSON and BIRCH, Circuit Judges, and JOHNSON, Senior Circuit Judge.
 BIRCH, Circuit Judge:
 
 
 1
 This appeal presents the first-impression issue of whether Rule 407 of the Federal Rules of Evidence applies to exclude evidence of subsequent remedial measures in strict products liability cases. We find that Rule 407 and the exceptions thereto do apply in strict products liability cases. The district court erred in its admonition to the jury to disregard the testimony concerning subsequent remedial measures that was properly admitted for impeachment purposes, and, consequently, erroneously denied Wood's motion for a new trial. Accordingly, we reverse the denial of the motion for a new trial and remand.
 
 I. FACTS
 
 2
 Appellant, Ruby Wood ("Wood"), seeks recovery from Morbark Industries, Inc. ("Morbark"), for the death of her husband, Ginger Wood.[1] On February 2, 1989, Ginger Wood and his coworker, John Infinger, were using a wood chipper known as the "Eeger Beever" to chip brush for the City of DeFuniak Springs, Florida. The "Eeger Beever" wood chipper was manufactured by appellee, Morbark, and designed by the president of Morbark, Norvel Morey. The infeed chute of the wood chipper used by Ginger Wood was seventeen inches long. Although Infinger did not see Ginger Wood when he was pulled into the wood chipper, he heard the machine make an unusual sound. When Infinger turned around, Ginger Wood's body was lying in the infeed chute of the wood chipper. Ginger Wood's head, arms, and the upper part of his torso were ablated when the knives of the wood chipper contacted his body.
 
 
 3
 Wood claims that the wood chipper was defective and unreasonably dangerous because, among other things, the infeed chute was too short to protect the operator adequately. Through an in limine motion, Morbark secured under Rule 407 the exclusion of evidence of post-accident design changes that lengthened the infeed chute of the wood chipper. Nevertheless, from the beginning of the trial, counsel for Morbark sought to imply to the jury that the seventeen-inch chute was the safest length chute available and was still in use by DeFuniak Springs as well as other government agencies.
 
 
 4
 In his opening statement to the jury, Morbark's counsel suggested that there had been no changes to the design of the wood chipper since the accident:
 
 
 5
 COUNSEL FOR MORBARK: As a matter of fact, the evidence will indicate that after Hurricane Andrew the Army Corps of Engineers ordered thirty machines just like the one that is involved in this case, for disposing of the debris down there.
 
 
 6
 R4-141-22 (emphasis added).
 
 
 7
 During his cross-examination of Infinger, Morbark's counsel once again attempted to leave the jury with the impression that there had been no subsequent change to the design of the infeed chute, and the court permitted Wood's counsel to rebut that implication:
 
 
 8
 Q: (counsel for Morbark): Mr. Infinger, are you still actively employed by the City of DeFuniak Springs?
 
 
 9
 A: Yes, I am.
 
 
 10
 Q: And do you still work in the same capacity as street maintenance?
 
 
 11
 A: Yes, I am.
 
 
 12
 Q: And you still have that Morbark chipper machine?
 
 
 13
 A: Yes, it's still there.
 
 
 14
 Id. at 44.
 
 
 15
 . . . .
 
 
 16
 Q: (counsel for Wood): Mr. Wylie [counsel for Morbark] asked you if the city was still using that machine, Mr. Infinger, and you indicated it had, is that correct?
 
 
 17
 A: That's correct.
 
 
 18
 Q: At Mr. Wylie's question you answered that. Is that exactly the same machine, Mr. Infinger?
 
 
 19
 A: It's the same machine.
 
 
 20
 Q: Is it exactly the same machine?
 
 
 21
 A: Same machine.
 
 
 22
 Q: Has there been any change to the machine?
 
 
 23
 A: The only changes within the machine is those rollers has been lifted up and there's been another chute out from the chute that's on that there.
 
 
 24
 Q: How has that chute been changed?
 
 
 25
 COUNSEL FOR MORBARK: Objection, Your Honor, beyond the scope.
 
 
 26
 THE COURT: Overruled.
 
 
 27
 Q: (Counsel for Wood): How has that chute been changed, Mr. Infinger?
 
 
 28
 A: Another chute has been, as seen on that, there has been welded another, made it that much longer.
 
 
 29
 Id. at 51.
 
 
 30
 Following the examination of Infinger, counsel engaged in the following discussion with the court outside the presence of the jury:
 
 
 31
 THE COURT: I am a little confused, Mr. Wylie, some matters that you're object[ing] to and the court has sustained the objection at pretrial and then you go right ahead and bring them right up. I want to be sure that objection and when the court sustained that objection that's on the basis of proffers and arguments that are made and if you change that here, then don't expect those rulings to apply any longer. If you ask this man and suggest that the city is still using that chipper, it's certainly fair for the other side to point out that there have been modifications to that chipper.
 
 
 32
 COUNSEL FOR MORBARK: Well, I think the Court ruled in the pretrial subsequent remedial measures would not be admitted unless the feasibility was--
 
 
 33
 THE COURT: Well, you opened the door when you started making suggestions to the jury that the city was still using that chipper, therefore, there must not be anything wrong with this chipper if the city still continues to use it on a daily basis and that will be taking unfair advantage of the Court's ruling. So I suggest that you opened the door to the fair rebuttal that was offered. I still didn't feel it necessary to go as far into the picture and design and all of that as yet. But I just want to make you aware, rely on that ruling, if those proffers and arguments change during the trial.
 
 
 34
 Id. at 56.
 
 
 35
 Near the end of the trial, the following exchange took place during counsel for Wood's examination of Norvel Morey:
 
 
 36
 Q: (Counsel for Wood): Isn't it true that you're just precluding any possible thing that might occur in everyday life, Mr. Morey, isn't that true?
 
 
 37
 A: (Mr. Morey): That's what the control bar is for, is if there's a problem, if they get their glove caught or any of their clothes caught they can stop it instantly.
 
 
 38
 Q: So you think that the control bar takes care of any of the problems this short chute poses as a danger to the user?
 
 
 39
 A: I've said it once and a thousand times, it's the safest length chute you could possibly put on the machine.
 
 
 40
 Q: Yet you're selling them to the Army Corps of Engineers longer?
 
 
 41
 COUNSEL FOR MORBARK: Objection.
 
 
 42
 THE COURT: Do you wish to go into it?
 
 
 43
 COUNSEL FOR MORBARK: No, I thought we already ruled.
 
 
 44
 THE COURT: I thought we had, too. I'm going to direct, Mr. Jennings [counsel for Wood], that you not bring this up again. It has no bearing or no relationship to this case. And the jury is directed to disregard any comment that has been made by counsel, any question, any answer that has been elicited from any witness concerning the sale of any additional or extra length chute. Proceed.
 
 
 45
 Id. at 177 (emphasis added).
 
 
 46
 In a discussion outside the presence of the jury, Wood's counsel attempted to clarify the court's admonition:
 
 
 47
 COUNSEL FOR WOOD: Your Honor, I would like to apologize to the Court. I was not intending to go against any ruling that the Court had made. I thought that you had previously made a ruling when I was asking about the Army Corps of Engineers, and he made an objection and you overruled his objection. I thought that at that point you had determined that they had opened the door completely.
 
 
 48
 THE COURT: That's the same reasoning as the other, is that I did not want to leave the false impression that the machines bought by the Army Corps of Engineers was this machine. No objection to you going into and proving otherwise, but when you continue well beyond that.
 
 
 49
 COUNSEL FOR WOOD: I was not intending to go beyond your ruling.
 
 
 50
 Id. at 180.
 
 
 51
 On September 14, 1993, the jury entered a verdict in favor of Morbark, finding that the "Eeger Beever" wood chipper was not unreasonably dangerous as designed and marketed. Wood moved for a new trial on the grounds that the district court committed reversible error when it admonished Wood's counsel in the jury's presence regarding counsel's attempt on cross-examination of Morey to go into the issue of subsequent remedial measures. The district court denied Wood's motion for a new trial.
 
 
 52
 In its order denying a new trial, the district court provided a detailed explanation for its pretrial and trial rulings on the evidentiary issue. The court pointed out that it granted Morbark's motion in limine to exclude any evidence of Morbark's post-accident extension of the infeed chute because Morbark did not deny feasibility. The court cautioned Morbark's attorney, however, that if feasibility ever became an issue, then the evidence of subsequent remedial measures would be allowed.
 
 
 53
 The district court's order denying the motion for a new trial discussed the direct and cross-examination of Infinger. The district court found that Morbark's counsel's cross-examination of Infinger attempted to suggest to the jury that the machine was safe because it was still being used by the City of DeFuniak Springs in an unmodified condition. The district court stated that it felt Morbark's counsel had misled the jury because the wood chipper being operated by the city had been modified by adding an extension to the infeed chute. Thus, the district court allowed Wood's counsel to elicit testimony from Infinger regarding the modification of the chute.
 
 
 54
 The district court went on to discuss its reasoning, explaining that it allowed testimony concerning design changes "solely in an effort to 'level the playing field,' if you will, because the testimony on direct undoubtedly had left the jurors with the impression that the machine was being used by both the city and the Corps of Engineers in an unmodified state, which clearly was not the case." R3-137-2.
 
 
 55
 The district court registered surprise when "plaintiff's counsel delved further into the Corps of Engineers' use of the chipper the following day during his cross examination of Norvel Morey, the owner of Morbark Industries, Inc." Id. at 3. Nevertheless, the district court did not find its admonition to plaintiff's counsel and its direction to the jury to be "unduly prejudicial to plaintiff's case, and the Court would have reacted in the same manner to any counsel's blatant attempt to circumvent a previous ruling by the Court." Id.
 
 II. ANALYSIS
 
 56
 We review a district court's denial of a motion for a new trial for abuse of discretion. Insurance Co. of N. Am. v. Valente, 933 F.2d 921, 923 (11th Cir.1991).[2] We will only reverse a district court's rulings concerning the admissibility of evidence where "the appellant can show that the judge abused his broad discretion and that the decision affected the substantial rights of the complaining party." Murphy v. City of Flagler Beach, 761 F.2d 622, 626 (11th Cir.1985) (citations omitted).
 
 
 57
 As a threshold issue, we address Wood's argument that Rule 407 does not apply in products liability cases. She claims that Rule 407 should not apply where there is any reason for the use of evidence of post-accident remedial measures other than to establish the defendant's negligence. Rule 407 provides that:
 
 
 58
 When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.
 
 
 59
 This circuit has not had the opportunity previously to rule on whether Rule 407 applies to bar evidence of subsequent remedial measures in strict products liability cases. Confronted with this precise issue today, we hold that Rule 407 does apply in strict products liability cases when the plaintiff alleges that a product is defective because the design is unreasonably dangerous.[3] We are persuaded that Rule 407 is necessary in such cases to focus the jury's attention on the product's condition or design at the time of the accident. As illustrated in our discussion of the remaining issues on appeal, the allowance under Rule 407 of evidence of subsequent measures to prove ownership, control, feasibility or for impeachment provides an adequate balance to prevent defendants from taking unfair advantage of the exclusion.
 
 
 60
 As an alternative argument to the inapplicability of Rule 407 to this case, Wood contends that the issue of whether subsequent remedial measures are excluded from evidence is a matter of state policy and should be governed by Florida statutes and case law. She argues that Florida case law supports her contention that the district court committed reversible error when it sustained defense counsel's objection and prevented plaintiff's counsel from questioning defendant's president about the modifications made to the "Eeger Beever" wood chippers sold to the Army Corps of Engineers.
 
 
 61
 In support of her argument that state law applies in this case, Wood urges us to follow the reasoning of Moe v. Avions Marcel Dassault-Breguet Aviation, 727 F.2d 917, 932 (10th Cir.), cert. denied, 469 U.S. 853, 105 S.Ct. 176, 83 L.Ed.2d 110 (1984), in which the Tenth Circuit concluded that because Rule 407 is based primarily on policy considerations, and because products liability is a state law cause of action, where state evidentiary law conflicts with Rule 407, state evidentiary law applies. We decline to follow the view asserted by the Tenth Circuit in this matter and adhere to our own circuit's precedent in diversity cases, holding that federal rules apply to procedural matters, including the admissibility of evidence. Southern Stone Co. v. Singer, 665 F.2d 698, 701 (5th Cir. Unit B 1982); Garwood v. International Paper Co., 666 F.2d 217, 223 (5th Cir. Unit B 1982).
 
 
 62
 Wood also argues that, even if Rule 407 applies in this case, the district court should have applied one of the exceptions provided in the rule and allowed evidence of subsequent remedial measures to show the feasibility of precautionary measures or for impeachment. Specifically, Wood claims that Morbark's president controverted the feasibility of Wood's proposed precautionary measures and, therefore, the trial judge erred in not allowing Wood's counsel to cross-examine Morbark's president about post-accident remedial measures taken by Morbark.
 
 
 63
 The trial court was correct in granting Morbark's motion in limine to exclude the evidence of post-accident remedial changes to the design of the wood chipper. The trial court also acted properly in cautioning Morbark's attorney that, if feasibility ever became an issue, evidence of subsequent remedial measures would be allowed. In its order denying Wood's motion for a new trial, the district court describes its effort to "level the playing field" by allowing limited evidence by Wood for impeachment purposes. R3-137-2. We agree that the admission of the testimony was necessary to prevent the jury from being misled.
 
 
 64
 In his opening statement, Morbark's counsel suggested that the wood chipper used by Ginger Wood was not defective because, after the accident, the government "ordered 30 machines just like the one that is involved in this case." R4-141-22. Morbark's counsel later elicited testimony from Infinger that left the jury with the impression that DeFuniak Springs had made no modifications to the wood chipper. The district court correctly determined that Morbark's counsel's opening statement, particularly when combined with Morbark's counsel's cross-examination of Infinger, took unfair advantage of the court's in limine ruling and opened the door for rebuttal testimony regarding the subsequent modifications to the chute.
 
 
 65
 Wood contends that the designer of the "Eeger Beever" wood chipper, Norvel Morey, put the feasibility of using a longer infeed chute at issue when he described the seventeen-inch chute as the "safest length chute you could possibly put on the machine." R5-142-177. While we do not find that this testimony put feasibility at issue, we do find that it opened the door to impeachment.[4] The description of the wood chipper in superlative terms is analogous to the situation in Muzyka v. Remington Arms Co., 774 F.2d 1309, 1313 (5th Cir.1985), where an allegedly defective rifle was described as "the premier rifle, the best and the safest of its kind on the market." The court in Muzyka found that the jury had been denied evidence that the design was changed within weeks of the subject accident "in impeachment of the experts who spoke in those superlatives." Id.; cf. Kelly v. Crown Equip. Co., 970 F.2d 1273, 1278 (3d Cir.1992) (evidence of subsequent remedial design changes was not admissible to impeach defendant's expert where defendant's expert testified that forklift's design was excellent and proper but did not testify that the design was the best or the only design possible). By referring to the seventeen-inch chute length as the "safest" length possible, Morey opened the door for impeachment. Wood's counsel should have been allowed to ask why the supposedly safest design possible was modified after the accident involving Ginger Wood. The failure of the district court to allow impeachment of this witness is not alone enough to show an abuse of the trial court's broad discretion, but the trial court's exclusion of the evidence in conjunction with a direction to the jury substantially affected the rights of Wood.
 
 
 66
 In response to Morbark's counsel's objection to plaintiff's attempt to impeach the testimony of Norvel Morey, the court directed the jury to "disregard any comment that has been made by counsel, any question, any answer that has been elicited by any witness concerning the sale of any additional or extra length chute." R5-142-178 (emphasis added). The district court's admonition to the jury to disregard all testimony about additional chute length substantially disadvantaged Wood by nullifying all the rebuttal testimony it properly allowed during the trial. "It is not for us to decide that the effect of what was excluded might not have altered the jury's views.... [I]f there is a reasonable likelihood that a substantial right was affected, we should not find the error harmless." Johnson v. William C. Ellis & Sons Iron Works, Inc., 609 F.2d 820, 823 (5th Cir.1980). Such a sweeping admonition was not harmless in this case.
 
 
 67
 Morbark argues that, even if the district court did err in giving this instruction to the jury, Wood has no standing to raise an objection to it on appeal because her counsel did not object to the instruction at the time it was given. First, we note that the court's admonition to the jury was not a part of the formal jury instructions, but, nevertheless, had the same weight as a formal instruction. Second, we find that, although Wood's counsel did not object in the presence of the jury, he did question the court's instruction at the conclusion of Morbark's case, after the jury was excused. At that time, Wood's counsel attempted to argue that Morbark's counsel had opened the door. The district court told Wood's counsel that he was attempting to continue "well beyond" the limited rebuttal testimony the court would allow. R5-142-180. This colloquy between the district court and Wood's counsel indicates to us that Wood did not waive her objection to the court's instruction. Nevertheless, even if we determined that Wood did not object to the district court's direction, we will depart from the rule of waiver when the district court's instruction amounts to plain error or results in a miscarriage of justice. Osterneck v. E.T. Barwick Indus., Inc., 825 F.2d 1521, 1533 (11th Cir.1987), aff'd sub nom. Osterneck v. Ernst & Whinney, 489 U.S. 169, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989).[5]
 
 III. CONCLUSION
 
 68
 Because Rule 407 applies to bar the evidence of design change in strict products liability cases, we do not find that the trial court erred in its original ruling excluding evidence of Morbark's use of longer infeed chutes after the accident at issue. After a careful review of the testimony, however, we are persuaded that the posture of the defense and the manner in which the evidence developed at trial required that, under Rule 407, evidence of the design change be permitted for purposes of impeachment. We REVERSE and REMAND for a new trial.
 
 
 
 [1]
 This action was originally brought in state court and removed by Morbark to federal court pursuant to 28 U.S.C. Secs. 1332 and 1441
 
 
 [2]
 "This standard recognizes the deference that is due the trial court's first-hand experience of the witnesses, their demeanor, and a context of the trial. This level of deference is particularly appropriate where a new trial is denied and the jury's verdict is left undisturbed." Rosenfield v. Wellington Leisure Prods., Inc., 827 F.2d 1493, 1498 (11th Cir.1987) (citation omitted)
 
 
 [3]
 We note that this issue has produced a split in circuit authority. All but two circuits have held that Rule 407 applies to strict products liability cases, but the reasons for adopting this view vary among the circuits. See Raymond v. Raymond Corp., 938 F.2d 1518, 1522-23 (1st Cir.1991) ("explicitly" holding that Rule 407 applies to strict liability cases and referring to two objectives of the rule: (1) to avoid unfairly prejudicing a defendant and (2) to further the social policy of encouraging manufacturers to create safer products); Cann v. Ford Motor Co., 658 F.2d 54, 60 (2d Cir.1981) (stating that "although negligence and strict products liability causes of action are distinguishable, no distinction between the two justifies the admission of evidence of subsequent remedial measures in strict products liability actions."), cert. denied, 456 U.S. 960, 102 S.Ct. 2036, 72 L.Ed.2d 484 (1982); Josephs v. Harris Corp., 677 F.2d 985, 990-91 (3d Cir.1982) (applying Rule 407 to strict liability cases); Petree v. Victor Fluid Power, Inc., 831 F.2d 1191, 1198 (3d Cir.1987) (finding that evidence of subsequent remedial measures taken subsequent to the date of sale but before the accident is excluded under Rule 407, "unless offered for another purpose as to which a genuine issue is present or for impeachment."); Werner v. Upjohn Co., 628 F.2d 848, 857-58 (4th Cir.1980) (concluding that Rule 407 applies to both strict liability and negligence actions because the distinctions between the two are "hypertechnical" in suits against manufacturers), cert. denied, 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804 (1981); Grenada Steel Indus., Inc. v. Alabama Oxygen Co., Inc., 695 F.2d 883, 888 (5th Cir.1983) (stating that "[t]he real question [in strict products liability cases] is whether the product or its design was defective at the time the product was sold"; therefore, "[t]he jury's attention should be directed to whether the product was reasonably safe at the time it was manufactured," and "[t]he introduction of evidence about subsequent changes in the product or its design threatens to confuse the jury by diverting its attention from whether the product was defective at the relevant time to what was done later."); Hall v. American Steamship Co., 688 F.2d 1062, 1066-67 (6th Cir.1982) (following the reasoning in Werner and holding that operation of a vessel in an unseaworthy condition, a species of strict liability, constitutes "culpable conduct" within the meaning of Rule 407); Flaminio v. Honda Motor Co., 733 F.2d 463, 469 (7th Cir.1984) (stating that "[t]he probability of another accident may be much smaller than the probability that the victim of the accident that has already occurred will sue the injurer and, if permitted, will make devastating use at trial of any measurers that the injurer may have taken since the accident to reduce the danger"; therefore to promote safety, Rule 407 applies to strict liability cases); Gauthier v. AMF, Inc., 788 F.2d 634, 636-37 (9th Cir.), as amended, 805 F.2d 337 (9th Cir.1986) (acknowledging and adopting the "overwhelming trend in federal courts" to exclude evidence of subsequent remedial measures in products liability cases but noting Rule 407's exceptions for impeachment and feasibility)
 The Tenth Circuit has declined to apply Rule 407 to strict liability cases. Herndon v. Seven Bar Flying Serv., Inc., 716 F.2d 1322, 1327-31 (10th Cir.1983) (reasoning that Rule 407 should be narrowly construed and exclusion of evidence under the rule is inappropriate in actions against defendants who are pursuing activities for which society has decided to assess strict liability), cert. denied, 466 U.S. 958, 104 S.Ct. 2170, 80 L.Ed.2d 553 (1984); Meller v. Heil Co., 745 F.2d 1297, 1301 n. 8 (10th Cir.) (stating that Rule 407 "strikes the balance, for better or worse, at excluding only that evidence offered to prove negligence or culpable conduct. Courts should show due respect for the careful consideration that preceded promulgation of the Federal Rules of Evidence. Absent evidence that either Congress, which prescribed the rules, the Supreme Court, which approved the rules, or the Advisory Committee, which drafted the rules, intended otherwise, we should apply Rule 407 as written."), cert. denied, 467 U.S. 1206, 104 S.Ct. 2390, 81 L.Ed.2d 347 (1984).
 The Eighth Circuit originally refused to apply Rule 407 to strict liability cases. Robbins v. Farmers Union Grain Terminal Ass'n., 552 F.2d 788, 793 (8th Cir.1977) ("Rule 407 is, by its terms, confined to cases involving negligence or other culpable conduct. The doctrine of strict liability by its very nature, does not include these elements.") Now, however, the court has found exceptions to this circumscription and even has questioned the sagacity of its original view. DeLuryea v. Winthrop Lab., 697 F.2d 222 (8th Cir.1983) (reasoning that when the issue of the case is failure to give adequate warning, there is essentially no distinction between negligence and strict liability theories because strict products liability encompasses negligence in culpable conduct); Burke v. Deere & Co., 6 F.3d 497, 506 n. 11 (8th Cir.1993) (noting the dangers inherent in Eighth Circuit's present approach to Rule 407 in strict liability cases and further noting "that it may indeed be wise to revisit the issue en banc in a proper case"), cert. denied, --- U.S. ----, 114 S.Ct. 1063, 127 L.Ed.2d 383 (1994).
 
 
 [4]
 In its order denying plaintiff's motion for a new trial the district court said, "Mr. Morey's credibility was never in issue, so the impeachment argument is completely unfounded. Morey never denied having sold chippers to the Corps of Engineers with an extended chute. He merely stated that he felt the shorter chute was 'the safest length chute you could possibly put on the machine.' He never said it was the cheapest design possible nor that the company could not afford the extended length chute. To the contrary, he freely admitted having sold machines with the extended chute." R3-137-3 (quoting R5-142-177)
 
 
 [5]
 We note that the colloquy between the court and plaintiff's counsel also presented the court with an opportunity to recognize and correct its overbroad instruction to the jury, but that it failed to do so